# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### September 9, 2004 Session

## STATE OF TENNESSEE  v.  SHAWN RAFAEL BOUGH

**Appeal by permission from the Court of Criminal Appeals**
**Criminal Court for Knox County**
**No. 68041A     Hon. Richard R. Baumgartner, Judge**

---

**No. E-2002-00717-SC-R11-CD - Filed November 1, 2004**

---

The defendant, Shawn Rafael Bough, was convicted of felony murder and especially aggravated robbery.  The Court of Criminal Appeals held that the motion for new trial, which was not filed until the date of the sentencing hearing on the especially aggravated robbery conviction, fifty-two days after judgment was entered on the felony murder conviction, was untimely as to the felony murder conviction.  The Court of Criminal Appeals also held that two amended motions for new trial were untimely.  On these two issues, we reverse the Court of Criminal Appeals, finding that the original motion for new trial, as well as the two amended motions for new trial, were timely filed as to both convictions.  The Court of Criminal Appeals found that the evidence was sufficient to support both convictions.  The remaining issues addressed by the Court only related to the especially aggravated robbery conviction because the Court had held that the motion for new trial was untimely.  On those issues, the Court held that (1) while the State's reference to a "missing witness" during closing argument was improper, the error was harmless beyond a reasonable doubt; (2) the witnesses Deanna Jones, Edie Jones and Dante Smith were not accomplices whose testimony needed corroboration, and therefore the trial court did not err in failing to give a jury instruction on accomplice testimony; and (3) the defendant waived any objection to the testimony of Isaiah Dixon regarding the defendant's out-of-court confession by his failure to raise the issue at trial.  We affirm the Court of Criminal Appeals on these issues.  However, because the Court of Criminal Appeals did not address these last three issues with respect to the felony murder conviction or any of the issues raised in the amended motions for new trial as to either conviction, we remand the case to the Court of Criminal Appeals for consideration of those issues.

**Tenn. R. App. P. 11 Permission to Appeal; Judgment of the Court of Criminal Appeals is Affirmed in Part, Reversed in Part, and Remanded to the Court of Criminal Appeals**

WILLIAM M. BARKER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, JANICE M. HOLDER, JJ., and J. STEVE DANIEL, S.J., joined.

Mark E. Stephens and John Halstead, Knoxville, Tennessee, for the appellant, Shawn Rafael Bough.

Paul G. Summers, Attorney General & Reporter; Michael E. Moore, Solicitor General; and John H. Bledsoe, Assistant Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL BACKGROUND**

On December 19, 1998, two sisters, Deanna and Edie Jones, vacated their student housing at Knoxville College for winter break. They planned to stay the night in Knoxville before catching their flight home to New Jersey the following morning. They went to the Expo Inn in Knoxville where Edie Jones rented room 207 for the night. While checking into the hotel, Deanna Jones saw the defendant, Shawn Bough, and co-defendant, Craig Shears, in the parking lot. She invited them to come up to their room later on that evening. Deanna and Edie Jones knew both the defendant and Craig Shears because the two men were also students at Knoxville College.

Montes Best was working at the desk when two African-American men who claimed to be looking for a friend in room 207 approached the locked front doors late at night. Deanna and Edie Jones remembered the defendant, co-defendant and another male student stopping by room 207 for a few minutes before midnight. The defendant and Craig Shears stopped by again after midnight, asking to use the telephone. The defendant used the telephone to call several airlines, attempting to secure a flight from Tennessee through Chicago to California, his home state. Deanna Jones noticed a gun underneath the corner of the bed where the defendant was sitting. She told the defendant not to forget his gun; he thanked her and put the gun in his sock. At that time, the defendant and Craig Shears left the room.

Sometime after midnight, the defendant and Craig Shears returned to room 207 for the third time, again to use the telephone. Deanna Jones heard the defendant ask the person on the other end of the phone about getting a ride. The two men left the room after the phone call. The defendant and Craig Shears came back to room 207 for a fourth and final time to tell Deanna and Edie Jones that they were leaving. At trial, Deanna Jones testified that it was "still dark" when the two men left the hotel room for the last time. However, the statement she gave to the police on the day of the incident indicates that the two left the hotel room around 9:00 a.m. on December 20, 1998. Around 10:00 a.m., Deanna and Edie heard something downstairs in the lobby area that sounded like three or four gunshots.

Dante Smith picked up the defendant and Craig Shears at the Expo Inn shortly after 10:00 a.m. on December 20, 1998, after being called repeatedly by the defendant. He drove to the hotel where he saw the defendant and Craig Shears running out of the lobby. The defendant was carrying a plastic tub which contained envelopes. Dante Smith testified that:

> He [the defendant] was just talking a lot. He kept on saying something about he thinks he killed -- or he thinks he shot somebody inside. He wasn't sure, but -- he said he shot him, but he wasn't sure if he killed him or not.

-2-

Mr. Smith drove the two men towards Knoxville College where he stopped the car and asked them to get out because he "had never done anything like this." Mr. Smith then drove back to his apartment.

The defendant and Craig Shears later showed up at Mr. Smith's apartment and started counting money from the plastic container they carried from the hotel. The defendant asked Mr. Smith if he would "hide the gun for him." Mr. Smith refused, asking the defendant if he was "crazy." The defendant also asked Mr. Smith to give the two a ride to the bus stop or airport. Again, Mr. Smith refused.

Just after 10:00 a.m. on December 20, 1998, officers of the Knoxville Police Department were dispatched to the Expo Inn in response to a 9-1-1 call from the hotel's clerk that there had been a robbery and shooting. According to the victim, Billy Oldham, two tall, thin black males from room 207 demanded money and shot him. According to the Knox County Medical Examiner, the victim died as a result of complications from multiple gun shot wounds.

Investigator A.J. Loeffler arrived at the Expo Inn around 10:15 a.m. Almost immediately, he got into the ambulance with the victim. The victim was "gasping for air" and kept saying "I am losing it. I am going out. I am losing it." The victim stated that he "was working the desk, and two guys came in from room 207, asked me for my money, and then shot me." The victim described the perpetrators as "two black males, tall, slender" with "a little bit of facial hair."

After interviewing the victim, Officer Loeffler went back to the Expo Inn. He noted that the telephone lines in the lobby were cut as well as those in the adjacent offices of rooms 105 and 106. The crime scene specialist, Joe Cox, found three .22 caliber long rifle cartridge cases behind the front desk and two cartridge cases located elsewhere in the lobby area. The detail tape on the cash register indicated that the "no-sale" button was pushed at 10:03 a .m. on December 20, 1998.

The defendant called Mr. Smith in January of 1999. He asked Mr. Smith if he talked to the police about the incident. Mr. Smith told the defendant he had not. A few months later, Mr. Smith talked to several detectives regarding his knowledge of the incident.

Isaiah Dixon, a long-time friend of the defendant, saw the defendant in California sometime after the December incident. The defendant told Mr. Dixon that he was on bail for a homicide charge in Tennessee. Mr. Dixon stated that the defendant "told me that he was trying to pull a heist, and there was [sic] things that went wrong. . . . [H]e said the man was taking too long, so he let him have it." The defendant told Mr. Dixon that he got a "couple thousand" in the heist, but that "he had went [sic] to jail shortly after that for like a warrant or something, and when he had got [sic] back to school, all the money wasn't there." At the time of trial, Mr. Dixon was incarcerated in a California prison as a result of a guilty plea for second degree burglary.

The defendant was arrested on May 9, 1999, at his mother's home in San Francisco, California. Officer Loeffler was present during the arrest and recorded a conversation with the

-3-

defendant later that day. During the conversation, the defendant indicated that he stayed at a hotel with Deanna and Edie the night he vacated the dorms for Christmas break and "left about 9:00 . . . in the morning . . . about 9:30." He stated that "the home boy gave me a ride to Nashville. I took my plane from there." He told Officer Loeffler that the guy who gave him and Craig Shears a ride was named "Ted" and that he drove a van. According to the defendant, "Ted" was a guy who "just come [sic] up to the school, you know . . . he just give [sic] us rides and stuff so I asked him could he give me a ride . . . the night before . . . he said alright, I'll be there." He stated that "Ted" picked him and Craig Shears up at around 9:00 or 9:30 a.m. on December 20, 1998, and took them straight to Nashville where he dropped them off at the airport after making sure their flights were not delayed.

## PROCEDURAL HISTORY

On May 6, 1999, the Knox County Grand Jury returned a multiple-count indictment against the defendant and Craig Shears for one count of first-degree premeditated murder, one count of felony murder, and one count of especially aggravated robbery. Following a jury trial on June 11 and 12, 2001, the defendant was found not guilty of first-degree premeditated murder, but guilty of felony murder and especially aggravated robbery. Immediately after the verdict was announced on June 12, 2001, the trial court imposed the mandatory life sentence and entered judgment on the felony murder conviction accordingly. At a subsequent sentencing hearing on August 3, 2001, the trial court sentenced the defendant to twenty-one years for the especially aggravated robbery, to run concurrently with the life sentence.

On August 3, 2001, the defendant filed a motion for new trial as to both convictions, alleging: (1) that the evidence was insufficient to find him guilty of felony murder and/or especially aggravated robbery; (2) that the state committed misconduct and the trial court erred in permitting the state to argue the missing witness rule; (3) that the trial court erred in failing to include a jury instruction regarding the missing witness argument; (4) that there was not sufficient corroboration of the testimony of Dante Smith to sustain a finding of guilty; and (5) that there was not sufficient corroboration of the defendant's alleged confession to Isaiah Dixon to establish guilt. A hearing on the motion was held on September 27, 2001, at which time the court orally denied the motion. At the conclusion of the hearing, defense counsel orally moved to withdraw from representing the defendant, and upon accepting the defendant's affidavit of indigency, the trial court appointed the District Public Defenders' office as new counsel.

On October 11, 2001, defendant's newly-appointed counsel filed an amended motion for new trial which asked the trial court to direct that a transcript be prepared "so that the newly appointed counsel . . . [could] properly preserve all objections and errors for the appellate courts." This amended motion for new trial did not raise any new substantive grounds for relief. On October 18, 2001, the trial court conducted a hearing on the amended motion for new trial wherein the attorneys for both sides argued whether the amended motion for a new trial was proper and timely. As a result of the hearing, the trial court ordered that the transcript of the pre-trial, trial and motion for new trial proceedings be prepared.

A second amended motion for new trial was filed by the defendant on March 6, 2002, alleging several new substantive grounds for relief. On March 13, 2002, the trial court held a hearing on the motion wherein the attorneys again argued whether the amended motion for new trial was proper and timely. The trial court overruled, on the merits, the amended motion for new trial on March 21, 2002. The defendant filed a notice of appeal on March 21, 2002.

On appeal, the Court of Criminal Appeals determined that the defendant's motion for new trial and his two amended motions for new trial were untimely as to the felony murder conviction because they were filed more than thirty days after the entry of judgment. As a result, all issues raised therein, with the exception of sufficiency of the evidence, were waived. As for the especially aggravated robbery conviction, the Court of Criminal Appeals found that the two amended motions for new trial were not timely filed and that the issues raised in those pleadings were waived. On the merits, the Court of Criminal Appeals held that the evidence was sufficient to support both convictions. The Court also held that with regard to the especially aggravated robbery conviction, the trial court did not err in allowing the State to argue the missing witness rule; the trial court did not err in failing to give a jury instruction on accomplice testimony; and the trial court did not err in failing to give a jury instruction on the out-of-court confession.

## ANALYSIS

### I. Motion for New Trial as to Felony Murder

When the guilty verdicts were entered on June 12, 2001, the trial judge entered a mandatory life sentence on the felony murder conviction and then set a sentencing hearing on the especially aggravated robbery conviction for August 3, 2001. The defendant filed his motion for new trial as to both convictions on August 3, 2001. While this was the same day that he was sentenced for the especially aggravated robbery conviction, it was fifty-two days after sentencing was entered on the felony murder conviction.

Tennessee Rule of Criminal Procedure 33(b) provides that "[a] motion for a new trial shall be made in writing . . . within thirty days of the date the order of sentence is entered." This filing deadline is mandatory and jurisdictional and may not be extended. Tenn. R. Crim. P. 45(b); State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997). A trial judge does not have jurisdiction to hear and determine the merits of a motion for a new trial which has not been timely filed. Tenn. R. App. P. 3(e). If a motion for new trial is not timely filed, all issues are deemed waived except for sufficiency of evidence and sentencing. Id.; Martin, 940 S.W.2d at 569.

The Court of Criminal Appeals held that the motion for new trial filed on August 3, 2001, was untimely as to the felony murder conviction because it was not filed within thirty days of the entry of judgment, which occurred on June 12, 2001. The court relied on the unreported case of State v. Benjamin Brown, No. W1999-00327-CCA-R3-CD, 2000 WL 1664226 (Tenn. Crim. App., Oct. 24, 2000), which held that where the judgment of conviction for felony murder was entered on April 30, 1999 and the judgment of conviction for aggravated child abuse was entered on May 26,

1999, the motion for new trial filed on June 14, 1999 was untimely as to the felony murder conviction.

Were we to accept the position of the Court of Criminal Appeals, it would mean that the two crimes, which occurred at the same time and were tried together, would suddenly be dealt with separately for post-trial purposes. Under this scheme, the motion for new trial on the felony murder conviction would have been required to be filed by July 12, 2001, and if no motion for new trial was filed, then a notice of appeal would have been due by July 12, 2001. Then, the defendant, sentenced on August 3, 2001 on the robbery conviction, would have had until September 2, 2001 to file a motion for new trial with respect to that conviction, or if no motion for new trial was filed, to file his appeal. Requiring a defendant to file two separate motions for new trial when only one trial occurred serves no purpose other than to create extra expense for the parties and the courts, as well as to waste the time of the parties and the courts.

The Rules of Criminal Procedure "are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay . . . ." Tenn. R. Crim. P. 2. To interpret Tennessee Rule of Criminal Procedure 33(b) as requiring two separate motions for new trial would be contrary to the spirit of the Rules of Criminal Procedure as expressed in Rule 2.

In cases such as the one under submission, where there is a single trial for felony murder and the underlying felony, and where the sentences are entered on different days, we interpret Rule 33(b) as to require a motion for new trial to be filed within thirty days of the day the last sentence is entered. This will avoid the unnecessary expense and time consumption that would result from requiring two separate motions for new trial.[1] Therefore, in this case, we hold that the motion for new trial as to both convictions must be filed within thirty days of the entry of sentencing on the underlying felony. Thus we find that the motion for new trial was timely as to the felony murder conviction as well as to the especially aggravated robbery conviction.

## II. Amended Motions for New Trial

In the case under submission, the initial motion for new trial was denied at a hearing on September 27, 2001. At that time, defendant's counsel moved to withdraw from the case, and new counsel was appointed. The defendant's newly appointed counsel filed an amended motion for new trial on October 11, 2001, requesting a new trial for "errors, presently unknown which [would] be enumerated by counsel after diligent review of the transcript of the proceedings." Subsequently, on March 6, 2002, the defendant filed a second amended motion for new trial stating specific allegations of error at trial. Over the objection of the State, the trial court conducted a hearing on the second

_____

[1] In an analogous, but unreported case of <u>Kevin Wilkins v. State</u>, No. W2002-00436-CCA-R3-PC, 2002 WL 31624971 (Tenn. Crim. App. Nov. 14, 2002), the Court of Criminal Appeals held that for a first-degree murder/especially aggravated robbery case where the offenses were separated in the appellate process, time would not begin to run for the filing of post-conviction relief until both cases were disposed of in the appellate process.

amended motion for new trial and denied the motion on the merits.

The Court of Criminal Appeals held that:

[T]he attempt by the appellant to amend the motion for a new trial on October 11, 2001 that failed to specifically state the grounds for a new trial and was filed after the trial court ruled on the initial motion for new trial was a nullity; the trial court did not have jurisdiction to hear and determine the merits of the grounds set forth in the amended motion.

Pursuant to the Rules of Criminal Procedure, amendments to a motion for new trial shall be allowed "liberally until the day of the hearing of the motion for a new trial." Tenn. R. Crim. P. 33(b). We have held, however, that this rule does not prevent a judge from allowing, at his or her discretion, an amendment to a motion for new trial at any time during which the trial judge has jurisdiction of the case. See State v. Butler, 626 S.W.2d 6, 12 (Tenn. 1981); see also State v. Washington, 658 S.W.2d 144, 146 (Tenn. Crim. App. 1983) (an amendment to a motion for new trial comes too late when it is filed after the trial judge has ruled upon the merits of the original motion).

In Butler, the defendant filed a motion for a new trial that was heard on November 7, 1979. The order denying the motion was not entered until November 21, 1979. A motion to amend the motion for a new trial was filed on November 12, 1979, setting forth what purported to be newly discovered evidence. This Court held that the motion was timely filed. Butler, 626 S.W.2d at 12.

The Trial judge, however, did not consider the merit of the motion, but accepted the State's argument that an amendment would not be appropriate under Rule 33 of the Tennessee Rules of Criminal Procedure. The rule provides in pertinent part that the "court shall upon motion allow amendments liberally *until the day of the hearing* of the motion for a new trial." (emphasis added) We would point out, however, that the rule does not prevent a judge, in his discretion, allowing an amendment to a motion for a new trial at any time the trial judge has jurisdiction of the case. As pointed out in Rule 2 of the Tennessee Rules of Criminal Procedure, "the rules are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay."

Id.

In this case, the trial judge denied the defendant's original motion for new trial on September 27, 2001. However, on October 11, 2001, fourteen days after that denial, the defendant filed an amended motion for new trial. The trial court still had jurisdiction over the case at that time as no notice of appeal had yet been filed. See State v. Pendergrass, 937 S.W.2d 834, 837 (Tenn. 1996) (noting that a trial court loses jurisdiction with the filing of a notice of appeal). Because the trial judge retained jurisdiction, it was within his discretion to hear and determine the amended motion.

## III. Sufficiency of Evidence

The standard for appellate review when a criminal defendant challenges the sufficiency of the evidence is "whether, considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Reid, 91 S.W.3d 247, 276 (Tenn. 2002); see also Tenn. R. App. P. 13(e). When reviewing the evidence, "the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." State v. Smith, 24 S.W.3d 274, 279 (Tenn. 2000). Moreover, "this Court does not re-weigh or re-evaluate the evidence. Nor may this Court substitute its inferences drawn from circumstantial evidence for those drawn by the trier of fact." Reid, 91 S.W.3d at 277 (citation omitted).

The Court of Criminal Appeals addressed the issue of the sufficiency of the evidence both as to the felony murder and the especially aggravated robbery, and found the evidence sufficient to sustain both convictions. While the evidence was for the most part circumstantial, we agree that it was clearly sufficient to support the jury's finding of guilt of both the murder and robbery. The evidence established that the victim was working at the front desk of the Expo Inn when two tall, thin black men "from room 207" demanded money and then shot him, ultimately killing him. The defendant was observed inside room 207 of the Expo Inn with a gun on the night prior to the shooting, and was in and out of that room throughout the night and early morning. The defendant and co-defendant were seen running from the hotel lobby close to the time that the victim was shot, carrying a bin matching the description of that used to hold money in the hotel safe. The defendant made incriminating statements to two different people, claiming that he shot someone inside the hotel. The register tape from the hotel cash register showed the "no sale" button was pushed right before the victim's call to 9-1-1.

Clearly, when considering this evidence in a light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt." Reid, 91 S.W.3d at 276.

## IV. State's Reference to "Missing Witness"

During trial, the State introduced a statement given by the defendant in which he references a person named "Ted," who allegedly picked up the defendant at the Expo Inn thirty minutes before the victim was shot. The State argued during closing arguments that if "Ted" really existed, the jury would have surely heard from him at trial because he would have exonerated the defendant. The defendant contends that the State's reference to a missing witness constitutes reversible error. The Court of Criminal Appeals addressed this issue as to the robbery conviction, and held the State committed prosecutorial misconduct in making the "missing witness" argument, but that the misconduct was not prejudicial and was harmless beyond a reasonable doubt.

A party may comment about an absent witness when the evidence shows "that the witness had knowledge of material facts, that a relationship exists between the witness and the party that

-8-

would naturally incline the witness to favor the party and that the missing witness was available to the process of the Court for the trial." Delk v. State, 590 S.W.2d 435, 440 (Tenn. 1979). The burden is on the proponent of the missing witness rule to establish the Delk prerequisites. See State v. Thompson, 768 S.W.2d 239, 250 (Tenn. 1989).

The Court of Criminal Appeals correctly found the State failed to show that all three of the Delk requirements were met. Specifically, no showing was made that a relationship existed between the witness and the defendant that would naturally incline the witness to favor the defendant or that the missing witness was available to the process of the court for the trial. Because the requirements outlined in Delk were not met, the trial court erred in allowing the State to comment on the defendant's failure to call the witness, and the comments by the State amounted to prosecutorial misconduct.

We must now determine whether the above error resulted in prejudice to the defendant. Judge v. State sets forth five factors to determine whether prosecutorial misconduct during closing argument prejudiced the defendant or was harmless beyond a reasonable doubt:

1. The conduct complained of viewed in context and in light of the facts and circumstances of the case.
2. The curative measures undertaken by the court and the prosecution.
3. The intent of the prosecutor in making the improper statement.
4. The cumulative effect of the improper conduct and any other errors in the record.
5. The relative strength or weakness of the case.

539 S.W.2d 340, 344 (Tenn. Crim. App. 1976); see also State v. Francis, 669 S.W.2d 85, 91 (Tenn. 1984).

The Court of Criminal Appeals held:

The record reflects that the only improper comments made by the State during closing arguments related to the missing witness inference. Because the comments were improper, the trial judge should have instructed the jury to disregard that part of the State's argument. However, the State's reference to the missing witness was not or [sic] extensive, and the State did not make any other improper comments. The prosecutor did not appear to be intentionally trying to unfairly prejudice the appellant. The appellant did not request a curative instruction. However, the trial judge did explain to the jury before closing arguments that the State had the burden of proof beyond a reasonable doubt. Further, the trial court fully and accurately instructed the jury on the difference between evidence and argument. Thus, we cannot conclude that the comment shifted the burden of proof from the State to the Defendant or unfairly prejudiced the appellant. . . . Therefore, we conclude that although the comment was improper, this error was harmless beyond a reasonable doubt.

We agree with the Court of Criminal Appeals' reasoning and conclusion that the State's comment regarding the missing witness was harmless error.

## *V. Accomplice Testimony*

In this case, the defendant challenges the testimony of Dante Smith, Edie Jones, and Deanna Jones, arguing that they were accomplices whose testimony had to be corroborated. It is well-settled in Tennessee that a defendant cannot be convicted solely upon the uncorroborated testimony of an accomplice. See State v. Bane, 57 S.W.3d 411, 419 (Tenn. 2001); Monts v. State, 379 S.W.2d 34, 43 (Tenn. 1964).

> There must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; *it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged.*

Bane, 57 S.W.3d at 419 (quoting State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994)) (emphasis added).

An accomplice is one who knowingly, voluntarily, and with common intent participates with the principal offender in the commission of a crime. State v. Lewis, 36 S.W.3d 88, 94 (Tenn. Crim. App. 2000); Conner v. State, 531 S.W.2d 119, 123 (Tenn. Crim. App. 1975). To satisfy the definition of an accomplice, it is not enough that the witness merely possess guilty knowledge, is morally delinquent, or even participated in a distinct but related offense. See State v. Lawson, 794 S.W.2d 363, 369 (Tenn. Crim. App. 1990). Rather, the test for whether a witness is an accomplice is whether the witness could have been convicted of the offense. Id.

While each of these witnesses was close in proximity to the defendant and co-defendant and to the perpetration of the offenses, each witness's testimony shows that none of the witnesses were actual accomplices to the conduct of the defendant and co-defendant. The evidence is clear that none of them "knowingly, voluntarily, and with common intent participate[d] with the principal offender in the commission of [the] offenses." Lewis, 36 S.W.3d at 94.

In any event, the defendant never requested a special jury instruction on accomplice corroboration, as he was required to do when the trial court did not give one. In State v. Anderson, 985 S.W.2d 9 (Tenn. Crim. App. 1997), which involved a similar factual situation, the Court of Criminal Appeals held that because the defendant failed to make a request for an accomplice instruction, the defendant waived the issue.

[O]ur supreme court has held that an instruction on the rule requiring corroboration of an accomplice's testimony is not fundamental. Upon the trial court's failure to instruct the jury regarding accomplice testimony and the requirement of corroboration, it becomes the obligation of the defendant to make a special request for the instruction. In the absence of a special request, the trial court does not err by failing to instruct the jury about accomplice testimony even if the circumstances of the case warrant such an instruction.

Anderson, 985 S.W.2d at 17 (citations omitted). Therefore, because the defendant in this case failed to request a special jury instruction on accomplice testimony, he waived the issue.

### VI. Out-Of-Court Confession

The defendant contends that the trial court erred in not giving a jury instruction on corroboration of confessions, pointing out that a confession must be corroborated by sufficient independent proof to support a guilty verdict. The Court of Criminal Appeals correctly determined that the defendant waived any objection to the testimony of Isaiah Dixon by his failure to raise the issue at trial, thereby preventing the trial court from having an opportunity to rule on the matter before the witness began his testimony before the jury. See Tenn. R. App. P. 36(a); Smith, 24 S.W.3d at 280 (finding that a failure to object to otherwise inadmissible evidence will allow that evidence to be considered as if it were, in fact, fully admissible under the law of evidence).

Even if the defendant's confession challenge was not waived, the defendant is not entitled to relief because the evidence is sufficient to corroborate his confession. "It is a well-established principle of law in this state that a conviction cannot be founded solely upon a defendant's confession, and our cases have long required some corroborating evidence in order to establish the corpus delicti." Smith, 24 S.W.3d at 281. However, "[the corroborating] evidence is sufficient if . . . it tends to connect the defendant with the commission to the offense, although the evidence is slight, and entitled, when standing by itself, to but little consideration." Id. (quoting Ricketts v. State, 241 S.W.2d 604, 606 (Tenn. 1951)).

In this case, the Court of Criminal Appeals correctly found sufficient corroboration of the defendant's confession in the defendant's presence at the motel at the approximate time of the incident as well as in the testimony of Edie Jones, Deanna Jones, and Dante Smith. This evidence is sufficient to corroborate the confession because it "tends to connect the defendant with the commission of the offense." Smith, 24 S.W.3d at 281. Even if this evidence could be characterized as "slight," that is all that is legally required for corroboration of a defendant's confession of culpability. Id.

### VII. Issues Pretermitted by Procedural Ruling of Court of Criminal Appeals

Because the Court of Criminal Appeals held that the motion for new trial was late as to the

felony murder conviction, the Court did not address the issues of the missing witness argument, the accomplice testimony, or the out-of-court confession with respect to the felony murder conviction. Additionally, because the Court found that the amended motions for new trial were untimely, the Court did not address any of the issues raised therein as to either conviction. We reverse the Court of Criminal Appeals' rulings as to the timeliness of the motions for new trial and remand the case to the Court of Criminal Appeals to consider the issues pretermitted by its procedural rulings.

## CONCLUSION

In summary, we find that the motion for new trial filed on August 3, 2001, was timely as to the felony murder conviction as well as the especially aggravated robbery conviction. We further find that the two amended motions for new trial were timely filed because they were filed while the trial court still retained jurisdiction over the case. On these two issues, we reverse the Court of Criminal Appeals.

We conclude that the evidence was sufficient to support both convictions, and affirm the Court of Criminal Appeals on that issue. With respect to the especially aggravated robbery conviction, we agree with the Court of Criminal Appeals that: (1) while the State's reference to a "missing witness" during closing argument was improper, the error was harmless beyond a reasonable doubt; (2) the witnesses Deanna Jones, Edie Jones, and Dante Smith were not accomplices whose testimony needed corroboration, and therefore the trial court did not err in failing to give a jury instruction on accomplice testimony; and (3) the defendant waived any objection to the testimony of Isaiah Dixon regarding the defendant's out-of-court confession by his failure to raise the issue at trial.

Because the Court of Criminal Appeals did not address these last three issues with respect to the felony murder conviction or any of the issues raised in the amended motions for new trial as to either conviction, we remand the case to the Court of Criminal Appeals for consideration of those issues.

The costs of the appeal are taxed to the State of Tennessee.

                                               _____

                                               WILLIAM M. BARKER, JUSTICE