# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### October 3, 2007 Session

## STATE OF TENNESSEE v. SHAWN HATCHER

**Appeal from the Criminal Court for Shelby County**
**No. 01-09093-95    W. Otis Higgs, Judge**

---

**No. W2006-01853-CCA-R3-CD  - Filed August 29, 2008**

---

Appellant, Shawn Hatcher, was involved in a shooting which resulted in the death of one victim and the serious injury of two other victims. As a result of the incident, Appellant was convicted by a Shelby County jury of first degree felony murder, first degree premeditated murder and two counts of attempted first degree murder. The trial court sentenced Appellant immediately to a mandatory life sentence for the first degree murder convictions. Appellant filed a motion for new trial. The trial court held a joint sentencing hearing and hearing on the motion for new trial. The trial court merged the two convictions for first degree murder and sentenced Appellant to fifteen years for each attempted murder conviction to be served concurrently with each other. The trial court ordered the life sentence to be served consecutively to the fifteen-year sentence. The trial court also denied the motion for new trial and appointed new counsel at the conclusion of the hearing for sentencing and the motion for new trial. Newly-appointed counsel filed an amended motion for new trial more than thirty days after the trial court denied the original motion for new trial. The trial court held a hearing on the amended motion for new trial and denied the motion. Appellant appealed. On appeal, the State argues that this appeal is not properly before this Court. We have determined that the issues presented in the amended motion for new trial are not properly before this Court because it was not filed with thirty days from the trial court's denial of the original motion for new trial. We have waived the timely-filing of the notice of appeal with regard to the original motion for new trial and address those issues on appeal. Therefore, the issues presented on appeal are that the evidence was insufficient to support the Appellant's convictions, the trial court erred in allowing in photographs of the murder victim into evidence, the trial court erred in not allowing Appellant to present medical evidence of his injuries to support his theory of defense, and the trial court erred in instructing the jury on the special instructions Appellant presented. After a thorough review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed**

JERRY L. SMITH, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Lance R. Chism, Memphis, Tennessee, for the appellant, Shawn Hatcher.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General, and Tom Hoover, Assistant District Attorney General, for the appellee, State of Tennessee.


**OPINION**


On April 3, 2001, Appellant was at his mother's house after having been released from juvenile custody. Appellant called his friend, Cornelius Jefferson, and invited him over to Appellant's mother's house. The two men spent the afternoon together at the house. At some point in the evening, Appellant's brother, Chris Hatcher, arrived.

Chris Hatcher told Appellant and Mr. Jefferson that Randall Moore, who was also known as "Red," was trying to kill him. Appellant later told the police that he believed from that conversation that Chris Hatcher intended to kill Mr. Moore. A friend of Chris Hatcher's, Dan Smith, also arrived at the house. Chris Hatcher had brought several weapons with him. When the four men left Appellant's mother's house, Appellant was armed with a shotgun, Chris Hatcher was armed with an SKS assault rifle, and Mr. Smith was armed with both a .22 and a .38 caliber weapon. Mr. Jefferson was unarmed.

The four men walked through the Raintree Apartments toward Anitra Flowers's apartment. Ms. Flowers was Mr. Moore's girlfriend at the time. She lived in the apartment with her three children, and Mr. Moore often visited. While on their way to Ms. Flowers's apartment, the four men passed a group of "kids." Chris Hatcher asked them where Red was. Timothy Jackson, one of the kids, replied that he did not know. Chris Hatcher pulled out a gun and held it to Mr. Jackson's side. Appellant told Chris Hatcher to leave the kids alone and said, "[L]et's go take care of this business." Mr. Jackson saw Appellant holding a handgun at Appellant's side. Mr. Jackson ran away and hid. About fifteen minutes later he heard gunshots from different weapons. The four men left the kids. When they arrived at Ms. Flowers's apartment, Chris Hatcher told Mr. Jefferson to knock on the front door. When the door was answered, Chris Hatcher knocked Mr. Jefferson out of the way and began shooting.

The evening in question, Ms. Flowers, her children, Mr. Moore and their friends, Marcel Mackey and Athena Cartwright were having supper at Ms. Flowers's apartment. About the time that they finished dinner, someone knocked on the door. Mr. Moore and Mr. Mackey answered the door. Ms. Flowers saw a short, black male at the door. Then she "hit the floor" because she heard gunshots. She did not see the guns but heard bullets passing her ears. According to Ms. Flowers, the bullets were coming from the door and the patio window. She saw Mr. Mackey on the floor. Mr. Moore turned the couch over to use as a shield. Ms. Flowers could not see Ms. Cartwright, but she could hear her screaming. Ms. Flowers attempted to move toward the bedroom to protect her children. When she got to the bedroom, Ms. Flowers called 9-1-1.

-2-

Ms. Cartwright also headed for the children's bedroom when the shooting began. She also stated that the shots were coming from different directions, and that there were a lot of them. When the shooting stopped, she went back to the front of the house. She saw Mr. Mackey lying on the floor. He did not respond to her or move. She did not see a telephone in the living room. She ran a few doors down to her own apartment to call 9-1-1, but the line was busy. When Ms. Cartwright returned to Ms. Flowers's apartment, the police were arriving.

When Officer Byron Braxton arrived at the scene, he found Mr. Mackey lying at the door in a large pool of blood with Ms. Cartwright standing over him crying. When an autopsy was conducted later, Mr. Mackey's cause of death was determined to be multiple gunshot wounds. The autopsy showed fifteen entrance wounds and a total of twenty-four wounds. Ms. Cartwright had suffered no injuries as a result of the incident. The officer did a sweep of the apartment and found Ms. Flowers's children in the bedroom uninjured and found Ms. Flowers, who had been shot in the leg three times, and Mr. Moore, who had also been shot in the legs, in the bathroom. After the paramedics arrived, Officer Braxton got statements from witnesses.

When the shooting began, Mr. Jefferson ran away and called someone to pick him up and take him to his cousin's house. While he was running, Mr. Jefferson heard shots from more than one kind of gun. A bystander told Officer Braxton that the shooters ran toward the north when they ran away from the apartment. At trial, one of Ms. Flowers's neighbors stated that she saw three people running through a field near the apartment complex after the shots had stopped. The individuals were running away from Ms. Flowers's apartment.

On the evening of the shooting, Sabrina Hatcher, Appellant's sister, was at Chris Hatcher's girlfriend's apartment. Ms. Hatcher had heard Chris Hatcher say on an earlier occasion that he had a problem with Mr. Moore. The police arrived at the apartment, and Ms. Hatcher gave a statement to the police. In that statement, Ms. Hatcher stated that she spoke with Appellant before the shooting, and he told her that he had heard that Mr. Moore was planning to kill both the Appellant and Chris Hatcher. According to her statement, she also told the police that Appellant said that he and Chris Hatcher were "fixin' to go kill him." Another witness testified that she saw Chris Hatcher and Appellant rob Mr. Moore about two weeks before the shooting. She stated that she saw Chris Hatcher put a gun in Ms. Flowers's face.

A few days after the shooting, Mr. Jefferson spoke with Appellant who told Mr. Jefferson that he did have a gun at the shooting. Mr. Jefferson later gave a statement to the police. In that statement, Mr. Jefferson said that Appellant told him that Appellant had a pistol and went into the apartment and shot at a female.

In December of 2001, Appellant met with Sergeant T. J. Helldorfer and gave a statement. In that statement, Appellant admitted to being present at the shooting. He also identified the other three participants. Appellant told Sergeant Helldorfer that Chris Hatcher wanted to kill Mr. Moore because someone told Chris Hatcher that Mr. Moore wanted to kill him. Appellant stated that he went with his brother to Ms. Flowers's apartment. Chris Hatcher and Mr. Smith knocked on the

door and began shooting when the door opened. According to Appellant's statement, both Chris Hatcher and Mr. Smith ran into the apartment. Appellant stated that he and Mr. Jefferson shot into the air in the courtyard. Appellant was standing between two apartment buildings during the shooting. After the shooting, all of the men ran away from the apartment together. Appellant stated that he and Mr. Jefferson paid someone to take them to a hotel where they stayed for a few days.

The Shelby County Grand Jury indicted Appellant on one count of felony murder, one count of premeditated murder and two counts of criminal attempt to commit first degree murder. Following a jury trial on January 25-28, 2005, Appellant was found guilty of all charges. The trial court imposed the mandatory life sentence with possibility of parole for the first degree murder convictions. On May 18, 2005, and October 3-4, 2005, the trial court held a sentencing hearing. Following the sentencing hearing, the trial court sentenced Appellant to fifteen years for each conviction for criminal attempt first degree murder to be served concurrently. The trial court merged the convictions for felony murder and premeditated murder and sentenced Appellant to serve his sentence of life in prison consecutively to his concurrent, fifteen-year sentences.

On February 22, 2005, Appellant's trial counsel filed a motion for new trial. After holding a hearing, the trial court denied the motion on October 3, 2005. On the same date, the trial court also allowed trial counsel to withdraw and appointed a new attorney for Appellant. On May 10, 2006, Appellant's new attorney filed an amended motion for new trial. On July 31, 2006, after conducting a hearing, the trial court denied the amended motion for new trial.

## ANALYSIS

We first address an issue raised by the State that Appellant's appeal is not properly before this Court. We must first set out the procedural history of this case. On January 28, 2005, Appellant was found guilty of first degree murder which carries a mandatory life sentence and two counts of attempted murder. On February 22, 2005, Appellant's first trial counsel filed a motion for new trial. The trial court entered the final judgments, including the order of sentence, on October 4, 2005. A sentencing hearing and hearing on a motion for new trial were heard jointly on October 4, 2005. At the conclusion of the hearing on the motion for new trial, the trial court denied the motion and appointed new counsel for Appellant. The trial court also stated that newly-appointed counsel would be allowed to file an amended motion for new trial. On November 2, 2005, newly-appointed counsel filed a "Motion Requesting Trial Court to Enter Order Permitting Counsel to File an Amended Motion for New Trial." In this motion, newly-appointed counsel argued that the trial court still had jurisdiction of Appellant's case because no notice of appeal had yet been filed. On the same date, the trial court filed an order granting the filing of an amended motion for new trial. On May 2, 2006, newly-appointed counsel filed an amended motion for new trial. The trial court held a hearing on the motion on July 31, 2006. The trial court entered an order denying the amended motion on the same date as the hearing. On August 30, 2006, Appellant filed a notice of appeal.

The State argues that pursuant to Rules 29(e) and 33(b) of the Tennessee Rules of Criminal Procedure a motion for judgment of acquittal or motion for a new trial must be filed within thirty

days of the date of entry of the order of sentence. Appellant's amended motion for new trial was filed after the thirty days. Therefore, according to the State, Appellant's appeal is not properly before this Court.

Rule 33 of the Tennessee Rules of Criminal Procedure states, "A motion for a new trial shall be in writing, or if made orally in open court, be reduced to writing, within thirty days of the date the order of sentence is entered." Tenn. R. Crim. P. 33(b). In *State v. Martin*, 940 S.W.2d 567 (Tenn. 1997), our supreme court stated that this thirty day limit for filing a motion for new trial is mandatory. 940 S.W.2d at 569. The court went on to state that a trial court is without jurisdiction to hear a late-filed motion for new trial. *Id.* In addition, "[t]he trial judge's erroneous consideration of ruling on a motion for new trial not timely filed . . . does not validate the motion." *Id.* (citing *State v. Dodson*, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989)).

Our supreme court revisited this issue in *State v. Bough*, 152 S.W.3d 453 (Tenn. 2004). In *Bough*, the defendant was found guilty of felony first degree murder and especially aggravated robbery on June 12, 2001. 152 S.W.3d at 459. The trial court imposed the mandatory life sentence for the first degree murder conviction on the same day. *Id.* On August 3, 2001, the trial court held a sentencing hearing. *Id.* The same date, the defendant filed a motion for new trial. *Id.* On September 27, 2001, the trial court held a hearing on the motion for new trial. At the conclusion of the hearing, the trial court denied the motion orally and appointed new counsel for the defendant. *Id.* On October 11, 2001, newly-appointed counsel filed an amended motion for new trial asking the trial court to order the preparation of a transcript. *Id.* The amended motion did not allege any new grounds. On March 6, 2002, the newly-appointed attorney filed a second amended motion that alleged new grounds. *Id.* On March 21, 2002, the trial court overruled the second amended motion for new trial, and the defendant filed a notice of appeal on the same date. *Id.*

On appeal to this Court, we determined that the defendant was prohibited from filing the amended motion for new trial on October 11, 2001. *State v. Shawn Rafael Bough*, No. E2002-00717-CCA-R3-CD, 2004 WL 50798, at *8 (Tenn. Crim. App., at Knoxville, Jan. 12, 2004), *rev'd*, 152 S.W.3d 453 (Tenn. 2004). This determination was based upon the fact that the trial court had ruled on the motion for new trial. *Id.* This Court pointed out that Rule 33(b) does allow for amendments up until the hearing on the motion. *Id.* This Court also stated that the trial court did not have jurisdiction to entertain an amended motion for new trial after the trial court had already ruled upon the merits of the original motion. *Id.* Therefore, the defendant's amended and second amended motions for new trial were prohibited. The issues presented in the amended and second amended motions for new trial were not addressed on appeal to this Court. *Id.* The defendant appealed from this Court's decision to our supreme court. *See Bough*, 152 S.W.3d 453. On appeal, our supreme court held that the amended motion for new trial was not prohibited. *Id.* at 461-62. Our supreme court stated:

In this case, the trial judge denied the defendant's original motion for new trial on September 27, 2001. However, on October 11, 2001, fourteen days after that denial, the defendant filed an amended motion for new trial. The trial court still had jurisdiction over the case at that time as no notice of appeal had yet been filed. *See State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996) (noting that a trial court loses jurisdiction with the filing of a notice of appeal). Because the trial judge retained jurisdiction, it was within his discretion to hear and determine the amended motion.

*Id.*

The facts of the case at hand are similar to *Bough*. As in *Bough*, a jury found Appellant guilty of one count of first degree felony murder, as well as an underlying felony. The trial courts in both this case and *Bough* imposed the mandatory life sentence at the conclusion of the trial. In both cases at the conclusion of the hearings on the motions for new trial, the trial court denied the motions and appointed new counsel. However, unlike *Bough*, the trial court in this case also filed a written order denying the motion for new trial on October 3, 2005.

At this point in the procedural history the similarities end. On November 2, 2005, newly-appointed counsel, in the case at hand, filed a motion entitled "Motion Requesting Trial Court to Enter Order Permitting Counsel to File an Amended Motion for New Trial." This motion was filed within thirty days of the trial court's denial of the motion for new trial. On the same date, the trial court granted the motion. An amended motion for new trial was not filed until May 2, 2006, well over thirty days after the trial court's denial of the motion for new trial. In *Bough*, newly-appointed counsel filed an amended motion for new trial within thirty days of the trial court's denial of the original motion for new trial.

Under Rule 4(a) of the Tennessee Rules of Appellate Procedure and Rule 37(d) of the Tennessee Rules of Criminal Procedure a defendant has thirty days to file a notice of appeal from the entry of the judgment from which the defendant intends to appeal. Rule 4(c) of the Tennessee Rules of Appellate Procedure specifically states that if a defendant files a timely motion for new trial, the date of the trial court's denial of the motion for new trial is the date from which the thirty days will run.

In *Bough*, newly-appointed counsel filed an amended motion for new trial on October 11, 2001. The amended motion for new trial was filed within thirty days of September 27, 2001, the date the trial court denied the original motion for new trial. Our supreme court stated that the trial court still had jurisdiction because a notice of appeal had not been entered. As stated above, under Rule 4 of the Tennessee Rules of Appellate Procedure a defendant has thirty days within which to file his notice of appeal. At the conclusion of the thirty days, if a notice of appeal has not been filed, a defendant waives any issues on appeal. Tenn. R. App. P. 4(a). Therefore, thirty days after the denial of the motion for new trial, the trial court loses jurisdiction because either a notice of appeal

is filed transferring jurisdiction to the appellate courts, or no notice of appeal is filed, and the case is finalized. If this were not the case, there would potentially be no finalization of any case.

Therefore, we interpret the rule in *Bough* as allowing an amended motion for new trial, after a trial court has ruled on an original motion for new trial, if and only if the amended motion is filed within the thirty day period between the ruling on a motion for new trial and the filing of a notice of appeal as required under Rule 4(a), or the lapse of the thirty day period without the filing of a notice of appeal and finalization of the case.

In the case at hand, newly-appointed counsel did not file an amended motion for new trial within the thirty day period. Instead, newly-appointed counsel filed a motion asking to file an amended motion for new trial at a later date. We conclude that newly-appointed counsel's motion asking to later file an amended motion does not fit within the parameters of *Bough*. The amended motion for new trial was not filed until May 2, 2006, well outside thirty days after the trial court's denial of the motion for new trial. At this point, the thirty days for the filing of a notice of appeal had already expired. For this reason, we conclude that we cannot consider the issues raised in the amended motion for new trial.

As stated above, there was a timely motion for new trial filed by original counsel. This motion was ruled upon by the trial court. Unfortunately, with appointment of new counsel and an attempt to file an amended motion for new trial, Appellant's notice of appeal was delayed because of procedural mistakes. Although the notice of appeal was filed more than thirty days after the trial court's denial of the original motion for new trial, this Court can waive timely filing of the notice of appeal when we determine that it is in the interest of justice. Tenn. R. App. P. 4(a). In this case, we conclude that it is in the interest of justice. Therefore, we waive the timely filing of the notice of appeal with regard to the issues in the timely-filed original motion for new trial.

We now turn to the issues presented in the original motion for new trial. In the original motion for new trial, Appellant argued four issues: (1) the evidence was insufficient to support the jury's verdicts of guilt; (2) the trial court erred in allowing photographs of the deceased into evidence over Appellant's objections; (3) the trial court erred in not allowing medical evidence concerning specific injuries to Appellant caused by attacks upon him by his brother; and (4) the trial court erred in denying Appellant's request for special instructions regarding Appellant's state of mind at the time of the crime.

### Sufficiency of the Evidence

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces

-7-

it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).

At the conclusion of the trial, the jury convicted Appellant of one count of first degree felony murder, one count of first degree premeditated murder, and two counts of criminal attempt to commit first degree murder. At trial, there was no dispute that Appellant was present at the shooting. His defense at trial was that Appellant was afraid of his brother and agreed to do what he said. However, it is clear from the jury verdicts that the jury did not credit his theory. It is the task of the jury to determine the credibility of witnesses as well as the factual issues raised by the evidence. *See Pruett*, 788 S.W.2d at 561.

The evidence at trial, when taken in a light favorable to the State, showed that Chris Hatcher and Appellant robbed Mr. Moore two or three weeks before the shooting occurred. While at their mother's house, Chris Hatcher told Appellant that Mr. Moore was intending to kill Chris Hatcher. When Chris Hatcher, Appellant, Mr. Jefferson and Mr. Smith left Appellant's mother's house they were armed with weapons. There was specific evidence that Appellant was armed with a weapon and intended to kill Mr. Moore. The men met a group of kids on the way to Mr. Moore's house, and Chris Hatcher threatened them. Appellant told Chris Hatcher to leave the kids alone and and told Chris Hatcher that they should go take care of their "business." Mr. Jefferson knocked on the door of the apartment. Chris Hatcher knocked him out of the way when the door opened and began shooting. Mr. Jefferson ran away when the shooting began and heard shots being fired from more than one type of gun. Witnesses saw three men run away from the apartment when shooting ceased. Mr. Mackey died as a result of gunshot wounds. In addition, both Mr. Moore and Ms. Flowers were injured by the shots fired.

First degree premeditated murder is defined as "[a] premeditated and intentional killing of another . . . ." T.C.A. § 39-13-202(a)(1). First degree felony murder is defined as "[a] killing of another committed in the perpetration of or attempt to perpetrate any first degree murder . . . ." T.C.A. § 39-13-202(a)(2). Criminal attempt is defined as:

(a) A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:

(1) Intentionally engages in action or causes a result that would constitute an offense, if the circumstances surrounding the conduct were as the person believes them to be;

(2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or

(3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

T.C.A. § 39-12-101(a).

There is evidence supporting the conclusion that Appellant went to the apartment with the intent to kill Mr. Mackey. The four men met beforehand, were armed and planned for Mr. Jefferson to knock on the door to gain access to the apartment. Appellant began shooting into the apartment with the intent to kill Mr. Mackey or anyone else who was in the way. Clearly, the evidence supports a conviction for attempt to commit first degree murder because he had the intent to kill. The only reason Mr. Moore and Ms. Flowers are not deceased is that fortunately their wounds were not fatal. Appellant's intent to kill was still present. With regard to Mr. Mackey, the evidence clearly shows that Appellant was involved in a premeditated intentional killing, as well as killing a victim during the perpetration of attempt to commit first degree murder.

We conclude that a rational trier of fact could find Appellant guilty of every element of each offense based upon the evidence presented at trial. Therefore, this issue is without merit.

### Photographs of the Victim

Appellant first objected to two photographs that were introduced during the testimony of the victim's mother. During her testimony, the State introduced a picture of the victim while he was alive and a picture of the victim at the morgue. The trial court overruled both objections. The trial court stated that it was "going to keep [Appellant's] objections in mind as [they went] along. They're entitled to show the deceased person, but I'm going to be consistent about them being cumulative and showing a whole lot . . . ." Appellant also objected to a photograph depicting the victim's body at the scene. The victim's body is face-down and the picture shows his body from his shoulders down to his feet. The trial court overruled the objection. Appellant also objected to the introduction of photographs of the x-rays of the victim created during the autopsy introduced to show the murder victim's wounds. The trial court conducted a bench conference and at its conclusion, overruled the objection.

At the motion for new trial Appellant argued that the photographs' prejudicial effect outweighed their probity. The State argued that the pictures they presented at trial were "cleaned up"

and were not as gory as others they could have chosen.  At the conclusion of the hearing on the motion for new trial, the trial court overruled the issue with regard to the pictures of the victim and stated, that "the pictures were presented in a fashion that did not indicate any prejudice.  They weren't grotesque type of pictures."

As we begin our analysis, we note well-established precedent providing "that trial courts have broad discretion in determining the admissibility of evidence, and their rulings will not be reversed absent an abuse of that discretion." *State v. McLeod*, 937 S.W.2d 867, 871 (Tenn. 1996).  Moreover, the Tennessee Rules of Evidence embody, and our courts traditionally have acknowledged, "a policy of liberality in the admission of evidence in both civil and criminal cases." *State v. Banks*, 564 S.W.2d 947, 949 (Tenn. 1978); *see also State v. Robinson*, 930 S.W.2d 78, 84 (Tenn. Crim. App. 1995).  To be admissible, evidence must satisfy the threshold determination of relevancy mandated by Rule 401 of the Tennessee Rules of Evidence.  *See, e.g.*, *Banks*, 564 S.W.2d at 949.  Rule 401 defines "relevant evidence" as being "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401.  However, relevant "evidence may be excluded if its probative value is substantially outweighed by . . . the danger of unfair prejudice."  Tenn. R. Evid. 403; *see also Banks*, 564 S.W.2d at 951.

Graphic, gruesome, or even horrifying photographs of crime victims may be admitted into evidence if they are relevant to some issues at trial and probative value is not outweighed by their prejudicial effect. *Banks*, 564 S.W.2d at 949-51.  On the other hand, "if they are not relevant to prove some part of the prosecution's case, they may not be admitted solely to inflame the jury and prejudice them against the defendant." *Id.* at 951 (citing *Milam v. Commonwealth*, 275 S.W.2d 921 (Ky. 1955)). The decision as to whether such photographs should be admitted is entrusted to the trial court, and that decision will not be reversed on appeal absent a showing of abuse of discretion. *Id.* at 949; *State v. Dickerson*, 885 S.W.2d 90, 92 (Tenn. Crim. App. 1993).

The term "undue prejudice" has been defined as "[a]n undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Banks*, 564 S.W.2d at 950-51.  In *Banks*, the Supreme Court gave the trial courts guidance for determining the admissibility of relevant photographic evidence and determined that a trial court should consider:

> (1) the accuracy and clarity of the picture and its value as evidence; (2) whether the picture depicts the body as it was found; (3) the adequacy of testimonial evidence in relating the facts to the jury; and (4) the need for the evidence to establish a prima facie case of guilt or to rebut the defendant's contentions.

*Id.*

We have reviewed the pictures to which Appellant objected at trial. We conclude that the trial court's judgment that the pictures were relevant and that their probative value is not outweighed by their prejudicial effect is correct. Therefore, we find no abuse of discretion on the part of the trial court. The first two photographs were of the victim, one when he was alive and one when he was in the morgue. They were identified by his mother. The morgue picture shows only the victim's head and shoulders. The amount of blood shown in the photograph is minimal. While it is a photograph of the deceased victim of a violent homicide, it is not gory or gruesome. We conclude that its prejudicial effect does not outweigh its probity. The photograph of the victim at the crime scene is also not gory or gruesome. The photograph shows the victim's body laying on the floor, face down. You cannot see the victim's head in the photograph. This photograph's probity outweighs any prejudicial effect especially considering its use to show how the police found the body at the crime scene. The photographs of the x-rays taken at the autopsy are definitely not prejudicial. They were used to show how the bullets entered particular parts of the victim's body. We conclude that the trial court did not abuse its discretion in overruling the Appellant's objection to the entry of the photographs.

Therefore, this issue is without merit.

### Appellant's Medical Records

Appellant also alleges that the trial court erred in refusing to allow Appellant to enter certain medical records into evidence. Appellant wanted to present this evidence to support his theory of defense that he was afraid of Chris Hatcher.

Appellant attempted to enter his medical records through his mother's testimony. The medical records consisted of a treatment record describing that Appellant was assaulted by his brother, the injuries Appellant had upon his arrival at the hospital, and the treatment provided to Appellant. The State objected to the entry of the medical records. At a jury-out bench conference, the State argued that the medical records were not relevant and were cumulative because Appellant's sister had already testified to the fact that Appellant went to the hospital and also described Appellant's injuries. In addition, Appellant's mother was expected to testify to the same information. The trial court denied Appellant's request to allow the medical records in as evidence.

In order to be admissible, evidence must be relevant and probative to an issue at trial. *State v. McCary*, 922 S.W.2d 511, 515 (Tenn. 1996); *see also* Tenn. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. However, relevant evidence may be excluded at trial if the probative value of that evidence "is substantially outweighed . . . by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. The determination of relevancy is left to the discretion of the trial court, and this Court will not overturn a trial court's determination in this regard in the absence of an abuse of discretion. *State v. Forbes*, 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995).

We find no abuse of discretion on the part of the trial court. The relevancy of the medical records was tenuous at best. Appellant was allowed to present evidence concerning the ongoing intimidation of Appellant by his brother. Appellant elicited testimony from both Appellant's mother and sister at trial detailing many incidents of intimidation. The evidence of the medical records was cumulative due to the fact that his mother and sister presented eyewitness accounts of the incident. The central issue at trial was Appellant's participation in the shooting of the victims, not whether or not his brother injured him severely. We conclude that the probative value of the medical records would be substantially outweighed by the fact that it would be needlessly cumulative evidence.

Therefore, this issue is without merit.

## Jury Instructions

At the trial, Appellant made two special requests for jury instructions which were denied by the trial court. A trial court has a duty to give a complete charge of the law applicable to the facts of the case. *State v. Harris*, 839 S.W.2d 54, 73 (Tenn. 1992). Anything short of a complete charge denies a defendant his constitutional right to trial by a jury. *State v. McAfee*, 737 S.W.2d 304, 308 (Tenn. Crim. App. 1987). However, Tennessee law does not mandate that any particular jury instructions be given so long as the trial court gives a complete charge on the applicable law. *State v. West*, 844 S.W.2d 144, 151 (Tenn. 1992). A charge is prejudicial error "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." *State v. Hodges*, 944 S.W.2d 346, 352 (Tenn. 1997). Erroneous jury instructions require a reversal, unless the error is harmless beyond a reasonable doubt. *See Welch v. State*, 836 S.W.2d 586 (Tenn. Crim. App. 1992).

The special request that Appellant argued about at the motion for new trial reads as follows[1]:

> In this case you have heard that [ ] the defendant acted because of fear of his brother, Christopher Hatcher, which could have affected his capacity to form the culpable mental state required to commit a particular offense.
>
> If you find from the evidence that the defendant's capacity to form a culpable mental state may have been affected, then you must determine beyond a reasonable doubt what the mental state of the defendant was at the time of the commission of the offense to determine of which, if any, offense he is guilty. (T.P.I. CRIM. 42.22; Evidence of Mental State); *State v. Hall*, 958 SW2nd 679, (1977) [sic]; *State v. Perry*, 13, SW3d 724, (1999) [sic]; *State v. Phipps*, 883 SW2d 138 (1994) [sic]. Moreover, if you find that the defendant's mental state did not rise to a justification for his participation of the crime, you may find the defendant guilty of a lesser-

---

[1] Due to the complex nature of the procedural history in this case, we are relying upon original trial counsel's argument at the hearing on the original motion for new trial for argument in this Court because the issues included in Appellant's brief stem from newly-appointed counsel's amended motion for new trial.

included offense because the defendant was incapable of forming the requisite intent of the crime charge[d]. (*State v. Hall*, 958 SW2d 679 (1997)[sic][).]

In other words, no person may be convicted of an offense unless the culpable mental state is proven beyond a reasonable doubt. (*State v. Hall*, 958 SW2d 679 [sic] (1997)[).]

Although Appellant's original trial counsel did not mention an instruction on the affirmative defense of durress specifically, he essentially argued that he wanted an instruction on the affirmative defense of duress. Tennessee Code Annotated section 39-11-504(a) states:

Duress is a defense to prosecution where the person or a third person is threatened with harm that is present, imminent, impending and of such a nature to induce a well-grounded apprehension of death or serious bodily injury if the act is not done. The threatened harm must be continuous throughout the time the act is being committed, and must be one from which the person cannot withdraw in safety. Further, the desirability and urgency of avoiding the harm must clearly outweigh the harm sought to be prevented by the law proscribing the conduct, according to ordinary standards of reasonableness.

The standard to allow inclusion of a statutory defense in the jury instructions is found in both caselaw and the statutes. The test to determine whether a trial court should have given a special instruction is whether "there is any evidence which reasonable minds could accept" to support such an instruction. *Johnson v. State*, 531 S.W.2d 558, 559 (Tenn. 1975). Under Tennessee Code Annotated section 39-11-203(c), the existence of the defense must be fairly raised by the proof if the defense is to be submitted to the jury. For a statutory defense to be fairly raised by the proof "a court must, in effect, consider the evidence in the light most favorable to the defendant, including drawing all reasonable inferences flowing from that evidence," because the trial courts and appellate courts must avoid judging the credibility of the witnesses when making this determination. *State v. Shropshire*, 874 S.W.2d 634 (Tenn. Crim. App. 1994).

When considering the evidence in a light most favorable to Appellant, we conclude that the defense of duress is not fairly raised by the proof and that the trial court was correct in denying the instruction. As stated above, duress constitutes "present, imminent, impending and of such a nature to induce a well-grounded apprehension of death or serious bodily injury if the act is not done." *See* T.C.A. § 39-11-504(a). Although there was evidence introduced concerning Chris Hatcher's history of abusive behavior toward the Appellant, there was no evidence of any specific threats against Appellant or even threatening behavior at the time of the incident. In fact, there was testimony from more than one witness that Appellant told Chris Hatcher to leave the kids alone so they could "take care of business." This action belies the contention that Chris Hatcher was threatening him with death or serious bodily injury in the time leading up to the shooting. In addition, the statute requires

that the threat be continuous throughout the action and that the person not have an opportunity to escape. *See id.* Mr. Jefferson testified that he ran away from the shooting. Clearly, Appellant had an opportunity to run away in the confusion of the shooting. Under these circumstances the defense of duress was not adequately raised, and it was not error for the trial court to refuse a jury instruction with respect to it.

## **CONCLUSION**

For the foregoing reasons, we affirm the judgments of the trial court.


_____
JERRY L. SMITH, JUDGE