IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 10, 2013

## STATE OF TENNESSEE v. RODNEY TURNER

**Appeal from the Criminal Court for Shelby County**
**No. 10-02394       James C. Beasley, Jr., Judge**

_____

**No. W2012-01930-CCA-R3-CD  - Filed December 18, 2013**

_____

The Defendant, Rodney Turner, was convicted by a jury of two counts of attempted first degree murder, a Class A felony, and one count of employing a firearm during the commission of a dangerous felony, a Class C felony.  See Tenn. Code Ann. §§ 39-12-101, -13-202, -17-1324.  The trial court sentenced the Defendant to concurrent sentences of forty years for both counts of attempted first degree murder.  The trial court also imposed a ten-year sentence for the employment of a firearm conviction and ordered that six years of that sentence be served at one hundred percent.  The trial court ordered that the sentence for the employment of a firearm conviction be served consecutively to the sentences for the attempted first degree murder convictions, for a total effective sentence of fifty years.  In this appeal as of right, the Defendant contends that the trial court erred by not requiring the State to produce a prior statement made by one of the State's witnesses.  Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and JAMES CURWOOD WITT, JR., JJ., joined.

Robert C. Brooks (on appeal) and Coleman W. Garrett (at trial), Memphis, Tennessee, for the appellant, Rodney Turner.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Robert William Ratton, III, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

FACTUAL BACKGROUND

In the early morning hours of August 3, 2009, Officer Brian Falatko of the Memphis Police Department (MPD) responded to an "auto theft" call. When Officer Falatko stepped out of his patrol car, the victim, Terry Higgs, came running up to him. Officer Falatko testified that Mr. Higgs seemed "pretty upset" and said to Officer Falatko, "They're trying to rob me, they've taken my car." Officer Falatko recalled that Mr. Higgs "appeared as though he was trying to get away from someone." Mr. Higgs told Officer Falatko that the men were running along a nearby fence that separated two apartment complexes.

Officer Falatko testified that he and Mr. Higgs were walking towards the fence when he saw "four individuals" running along the fence. Almost immediately, one of the men shot at Officer Falatko and Mr. Higgs with "what appeared to be shotgun." Another man, the Defendant, began shooting at them with "what appeared to be a pistol." Officer Falatko testified that he knew it was a pistol because the Defendant was "back lit extremely well" and he could see "the silver glean from the light." A third man then began shooting at them with another pistol.

Officer Falatko testified that Mr. Higgs "was struck by the shotgun blast" and that he pushed Mr. Higgs behind him to protect Mr. Higgs. According to Officer Falatko, he then saw the Defendant, who was wearing a "white shirt and blue jean shorts," stop and "square off" to fire at Officer Falatko and Mr. Higgs. Officer Falatko testified that he "could see the muzzle flashes coming from" the silver pistol. Officer Falatko pulled out his gun and shot at the Defendant three times, hitting him on the third shot. The men with the shotgun and the other pistol took cover behind some nearby dumpsters and continued to shoot at Officer Falatko.

Officer Falatko testified that a fourth man in a red shirt tried to help the Defendant over the fence but that the Defendant's shirt got stuck on the fence, and he was left hanging there. The man in the red shirt abandoned the Defendant when more police officers arrived to assist Officer Falatko. Officer Jack Henry of the MPD testified that he responded to Officer Falatko's call for backup. When Officer Henry arrived on the scene, he saw the Defendant hanging from the fence and a man in a red shirt trying to help the Defendant before running away.

Officer Henry found a "two-shot," silver derringer pistol on the ground near the Defendant's feet. In addition to the derringer found by the Defendant's feet, police officers also recovered spent shotgun casings near the fence. In the neighboring apartment complex, witnesses saw a man wearing a red shirt and another man run into an apartment after the shooting. Police officers found Chris Burchette and a man known as "Strilla" inside the

apartment. A search of the apartment revealed a red shirt with what appeared to be blood on it, a pistol, and a shotgun.

Later testing by the Tennessee Bureau of Investigation (TBI) determined that the derringer found at the Defendant's feet had the Defendant's blood and DNA on it. The derringer was in working order and had two spent casings in it, meaning that it had been fired. The Defendant's blood and DNA were also found on the red shirt discovered in the apartment where Mr. Burchette and "Strilla" had run into after the shooting. The spent shell casings found by the fence matched the shotgun recovered from the apartment.

Mr. Higgs testified that he called the police because a man known as "G-Baby" had walked into his apartment and taken the keys to his car. According to Mr. Higgs, after he got off the phone with the police he went outside to see if he could find his car and he saw a man with a shotgun. Mr. Higgs testified that he ran back into his house and slammed the door. Mr. Higgs then saw "some more guys standing" outside his apartment. When Officer Falatko arrived, Mr. Higgs went outside to tell him about the men. Mr. Higgs testified that as he and Officer Falatko approached the men, the man with the shotgun fired at them and then "two more guys behind him fired with handguns." Mr. Higgs further testified that he only saw three men along the fence. Mr. Higgs was struck by buckshot from the shotgun and ran back to his apartment when Officer Falatko began shooting at the men.

Shaterrica Rufus testified that she lived in a nearby apartment complex and that she saw the Defendant with "Strilla" and "G-Baby" the day before the shooting. Ms. Rufus further testified that she again saw the Defendant with "Strilla" and "G-Baby" approximately ten minutes before the shooting and that the Defendant was carrying a black "long gun." Ms. Rufus also testified that she saw Mr. Burchette wearing a red shirt and carrying a handgun before the shooting. Based upon the foregoing evidence, the jury convicted the Defendant of two counts of attempted first degree murder and one count of employing a firearm during the commission of a dangerous felony. The trial court imposed an effective sentence of fifty years, with six years to be served at one hundred percent.

## ANALYSIS

The Defendant contends that the trial court erred by not requiring the State to produce a prior statement made by Officer Falatko. The Defendant argues that Officer Falatko's testimony "was the only direct evidence against" him and that his statement could have contained valuable impeachment material. The State responds that the Defendant has waived our review of this issue by failing to file a timely motion for new trial and a timely notice of appeal. The State further responds that plain error review of the issue is not warranted in this case.

-3-

Prior to trial and pursuant to Tennessee Rule of Criminal Procedure 26.2, the Defendant requested that the State produce a statement given by Officer Falatko to investigators from the MPD's "Security Squad," which investigates all officer-involved shootings. The State responded that the MPD was unwilling to disclose the statement because Officer Falatko had been required to give a statement about the shooting to the Security Squad or face possible termination from his employment. Citing the United States Supreme Court's decision in Garrity v. New Jersey, 385 U.S. 493 (1967), the State argued that Officer Falatko's statement was given under duress and coerced; therefore, it was "not allowed to come in."

The trial court was initially skeptical of the State's argument and stated that it believed Officer's Falatko's statement should be treated like any other statement for purposes of Rule 26.2. However, after a brief recess, the trial court stated that it had reviewed the Garrity decision and that it believed Garrity stood for the proposition that statements given by police officer under the threat of termination "can't be used for purposes of prosecution or for anything." The trial court explained that it thought the Garrity decision made Officer Falatko's statement "not admissible for any purpose for anybody under any proceeding." The trial court further refused to require the State to turn over the statement for an in camera inspection or to include a sealed copy of the statement in the record for appellate review.

The trial court did allow the attorneys to question Officer Falatko about the circumstances surrounding his statement. Officer Falatko testified that he did not prepare a written report regarding this incident because he was "the victim of a crime." Officer Falatko did give a statement to the Security Squad because he was involved in a shooting. Officer Falatko testified that he signed a "Garrity waiver" and that it was his understanding that he could be terminated if he refused to give a statement to the Security Squad. Officer Falatko further testified that he understood that his statement could "only be used for inter-departmental purposes."

Following the Defendant's trial, the trial court held a sentencing hearing on September 16, 2011, and entered judgments of conviction that day. Almost two months after entry of the judgments, the Defendant filed a motion for new trial on November 15, 2011. On July 26, 2012, the Defendant filed an amended motion for new trial. The same day the trial court held a hearing on the Defendant's motion for new trial. At the hearing, the trial court stated that its "initial thoughts were that a statement was a statement and that [Officer Falatko's statement] should be turned over," but after reviewing the Garrity opinion, it believed that Rule 26.2 did not apply to Officer Falatko's statement. The trial court ultimately denied the Defendant's motion. Corrected judgment forms were entered on August 9, 2012, and the Defendant filed his notice of appeal on August 27, 2012.

-4-

"A motion for new trial <u>shall</u> be in writing or, if made orally in open court, be reduced to writing, within thirty days of the date the order of sentence is entered." Tenn. R. Crim. P. 33(b) (emphasis added). The thirty day period for filing a motion for new trial "is jurisdictional and cannot be expanded." <u>State v. Hatcher</u>, 310 S.W.3d 788, 800 (Tenn. 2010). As such, "[a] trial judge does not have jurisdiction to hear and determine the merits of a motion for new trial which has not been timely filed." <u>State v. Bough</u>, 152 S.W.3d 453, 460 (Tenn. 2004). With respect to the corrected judgment forms, we note that an amended or corrected judgment operates by definition upon the existing judgment. <u>State v. Raygan L. Presley</u>, No. M2007-02487-CCA-R3-CD, 2008 WL 3843849, at *3 (Tenn. Crim. App. Aug. 18, 2008). Therefore, "an amended or corrected judgment generally will not restart the time for filing a tolling motion such as a . . . motion for new trial." <u>Id.</u>

Failure to timely file a motion for new trial causes all issues to be "deemed waived except for sufficiency of [the] evidence and sentencing." <u>Bough</u>, 152 S.W.3d at 460. Likewise, a notice of appeal must be filed "within [thirty] days after the date of entry of the judgment appealed from." Tenn. R. App. P. 4(a). An untimely motion for new trial will not toll this thirty-day period. <u>State v. Davis</u>, 748 S.W.2d 206, 207 (Tenn. Crim. App. 1987). While this court may waive the untimely filing of a notice of appeal pursuant to Tennessee Rule of Appellate Procedure 4(a), we do not have the authority to waive the untimely filing of a motion for new trial. <u>State v. Stephens</u>, 264 S.W.3d 719, 728 (Tenn. Crim. App. 2007). Accordingly, the Defendant's issue is waived because he filed his motion for new trial approximately two months after the judgments were entered and subsequently filed his notice of appeal almost one year late.

However, we may review issues normally considered waived pursuant to the plain error doctrine. Tenn. R. App. P. 36(b). The doctrine of plain error only applies when all five of the following factors have been established:

> (1) the record clearly establishes what occurred in the trial court;
> (2) the error breached a clear and unequivocal rule of law;
> (3) the error adversely affected a substantial right of the complaining party;
> (4) the error was not waived for tactical reasons; and
> (5) substantial justice is at stake; that is, the error was so significant that it "probably changed the outcome of the trial."

<u>State v. Hatcher</u>, 310 S.W.3d 788, 808 (Tenn. 2010) (quoting <u>State v. Smith</u>, 24 S.W.3d 274, 282-83 (Tenn. 2000)). "An error would have to [be] especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding, to rise to the level of plain error." <u>State v. Page</u>, 184 S.W.3d 223, 231 (Tenn. 2006).

Tennessee Rule of Criminal Procedure 26.2 provides as follows:

> After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney for the state or the defendant and the defendant's attorney to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony.

The rule further provides that if "the other party claims that the statement contains matter that does not relate to the subject matter of the witness's testimony, the court shall order that it be delivered to the court in camera." Tenn. R. Crim. P. 26.2(b)(2)(A). The trial court then may redact any irrelevant portions of the statement before delivering it to the moving party, but a complete copy of the statement is to be retained for possible appellate review. Tenn. R. Crim. P. 26.2(b)(2)(B).

In Garrity, the United States Supreme Court held that "statements obtained under threat of removal from office" by several police officers could not later be used to prosecute the officers because the statements had been coerced. 385 U.S. at 500. Here, Officer Falatko's statement was not being used to prosecute him. Instead, the Defendant wanted Officer Falatko's statement to determine if there was any possible impeachment material contained in the statement. There is nothing in the Garrity opinion to suggest, and the State cites to no authority to support, the proposition that Officer Falatko's statement could not be produced pursuant to Rule 26.2 because it was "obtained under threat of removal from office." There is certainly nothing in Garrity to support the trial court's conclusion that it could not require the statement produced for an in camera inspection or retained for appellate review.

However, given the overwhelming evidence corroborating Officer Falatko's testimony, we do not believe that the trial court's failure to require production of the statement "probably changed the outcome of the trial." The Defendant was found hanging from a fence, shot, wearing clothes matching Officer Falatko's description, and with a silver derringer at his feet with his blood and DNA on it. The derringer was in working order and had two spent casings in it, meaning that it had been fired. Mr. Burchette and "Strilla" were seen running into a nearby apartment after the shooting. Inside the apartment officers found a red shirt with the Defendant's blood on it, a pistol, and the shotgun used in the shooting. The Defendant had been seen in the company of "G-Baby" and "Strilla" carrying a gun ten minutes before the shooting. Given the overwhelming evidence corroborating Officer Falatko's testimony, we conclude that plain error review is not warranted in this case and affirm the judgments of the trial court.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE