IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 15, 2015

**STATE OF TENNESSEE v. HESTER CROY**

**Appeal from the Criminal Court for Sullivan County
No. S59290     R. Jerry Beck, Judge**

_____

**No. E2014-02406-CCA-R3-CD – Filed March 17, 2016**

_____

The defendant, Hester Croy, was convicted of theft of property under $500, a Class A misdemeanor. On appeal, she argues that the trial court erred by ruling that her prior convictions for theft of property would be admissible for impeachment purposes if she testified. Following our review, we conclude that this issue is waived due to the defendant's failure to file a motion for new trial and that plain error review is not warranted. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., J., joined. ROGER A. PAGE, J., not participating.

C. Brad Sproles (on appeal) and Richard A. Spivey (at trial), Kingsport, Tennessee, for the Appellant, Hester Ann Croy.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Barry Staubus, District Attorney General; and Julie R. Canter, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**FACTS AND PROCEDURAL HISTORY**

This case arose after the defendant and her daughter took numerous items from a Wal-Mart without paying for them. The defendant was convicted of theft of property

under $500 in a bench trial in general sessions court. She appealed to the criminal court and proceeded to be tried by a jury.

At the jury trial, Chris Akens and James Fanning testified that they were loss prevention officers at Wal-Mart. On February 16, 2011, Mr. Akens saw the defendant in the store around 6:30 or 6:45 p.m., and she was in the "Celebration Department." The defendant was with her daughter, Brittany Woliver, and the defendant also had an infant child in a baby carrier in her shopping cart. Mr. Aken and Mr. Fanning noticed the women "looking up as if to locate cameras." Both loss prevention officers found this behavior suspicious, and they began to observe the defendant and her daughter. Mr. Fanning saw the defendant and Ms. Woliver selecting party items and placing them into their shopping cart. Mr. Fanning observed both women "kind of putting the stuff up underneath the car seat" and "behind it." Wal-Mart sold "Celebration bag[s]," and Mr. Fanning watched the defendant place merchandise into the Celebration bag inside of the shopping cart, inside of the cart itself, and "around" the baby carrier. The defendant would hand items to Ms. Woliver, who "would put them in behind" the shopping cart. Mr. Fanning observed that the women "took turns" acquiring merchandise in this manner.

The defendant and Ms. Woliver left the Celebration Department and went in different directions. Mr. Aken followed Ms. Woliver to the Toy Department, and Mr. Fanning followed the defendant to the Infant and Girls' Apparel Department. In the Toy Department, Mr. Aken saw Ms. Woliver select two toys. She then went to the Electronics Department and selected a DVD. Ms. Woliver went to a check-out counter in the Electronics Department and paid for the DVD and one of the toys. The cashier placed both of the purchased items into a shopping bag, and Ms. Woliver held onto the second toy.

Ms. Woliver proceeded to the Infants and Girls' Department and rejoined the defendant. Mr. Fanning saw that Ms. Woliver was carrying some toys and a Walmart shopping bag. Ms. Woliver placed her shopping bag in the defendant's shopping cart and concealed some items in the shopping bag. The defendant then selected several pairs of pants from the Ladies' Department, and she placed them into the shopping cart.

The defendant and Ms. Woliver next returned to the Celebration Department. Mr. Fanning observed both women select party merchandise and place it into a Celebration bag inside of the shopping cart. Mr. Aken saw the defendant handing Ms. Woliver various items, which Ms. Woliver placed inside the shopping bag, underneath a blanket in the baby carrier, and inside of a diaper bag. Mr. Aken also observed the defendant place several items inside of the diaper bag, although he testified that Ms. Woliver was the person placing the majority of the items in the cart and diaper bag. The defendant then removed the pants from the shopping cart and placed them into an empty shopping

cart that was in the aisle. The defendant and Ms. Woliver proceeded to the register, and Ms. Woliver was pushing the cart that contained the concealed merchandise. At the register, the defendant paid for her pants. Ms. Woliver was next to check out, and the defendant stood at the register and waited for her to complete her purchase. Ms. Woliver "made a small purchase," and she did not pay for all of the items that she and the defendant had placed into the shopping cart.

After making their purchases, the defendant and Ms. Woliver proceeded to the Wal-Mart exit, where Mr. Fanning and Mr. Aken approached them and identified themselves as loss prevention officers. Mr. Fanning and Mr. Aken asked the defendant and Ms. Woliver to come to the loss prevention office. Mr. Aken testified that he made a list of the items that were in the shopping cart but not purchased, and the list included party supplies and one toy. He stated that the total value of the items was $175.73 and that neither Ms. Woliver nor the defendant had permission to take the items without paying for them.

The jury convicted the defendant of one count of theft of property of $500 or less. The trial court sentenced the defendant to serve eleven months and twenty-nine days, suspended to community corrections. The judgment was entered on October 27, 2014, and no motion for new trial was filed. On December 1, 2014, the defendant filed a handwritten notice in the trial court asking "for a Supreme Court Appeal on [her] case."

## ANALYSIS

The defendant argues that the trial court erred in ruling that the defendant's prior convictions were admissible for impeachment purposes. She argues that "the trial court committed reversible error by failing to properly apply Rule 404(b) to the prior convictions, and wrongfully ruled that the [convictions] would be admissible as impeachment evidence if the [defendant] chose to testify." The State responds that this issue is waived because the defendant failed to file a motion for new trial. The State also asserts that the trial court's ruling does not rise to the level of plain error.

Tennessee Rule of Criminal Procedure 33(b) provides that a motion for new trial must be filed within thirty days of the entry of judgment. "[T]his thirty-day period is jurisdictional and cannot be expanded." *State v. Hatcher*, 310 S.W.3d 788, 800 (Tenn. 2010) (citations omitted). The failure to timely file a motion for new trial results in the waiver of all issues except for sufficiency of the evidence and sentencing. *State v. Bough*, 152 S.W.3d 453, 460 (Tenn. 2004); *see* Tenn. R. App. P. 3(e) (stating that "no issue presented for review shall be predicated upon error in the admission or exclusion of evidence . . . unless the same was specifically stated in a motion for a new trial").

3

The defendant acknowledges in her brief that no motion for new trial was filed, and the record supports this concession. Accordingly, this issue is waived, and we may only review it for plain error. Tenn. R. App. P. 36(b) ("When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal."). Five factors must be met before this court will conclude that plain error exists:

> "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'"

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994). Our court has stated that plain error review will rarely extend to an evidentiary issue. *State v. Ricky E. Scoville*, No. M2006-01684-CCA-R3-CD, 2007 WL 2600540, at *2 (Tenn. Crim. App. Sept. 11, 2007).

During a jury-out hearing, the trial court ruled on the admissibility of the defendant's prior convictions for theft of property less than $500 for impeachment purposes. The trial court stated that the admission of the convictions was governed by Tennessee Rule of Evidence 609. The court observed that the convictions were for crimes of dishonesty and that they would be probative of the defendant's truthfulness. The court found that the probative value of the convictions would outweigh any danger of unfair prejudice. During a *Momon* colloquy, the defendant testified that she had elected not to testify as a result of the trial court's ruling regarding the admission of the convictions.

We conclude that the issue does not warrant plain error review because the defendant cannot establish that a clear and unequivocal rule of law was breached. The defendant argues that the evidence was inadmissible under Tennessee Rule of Evidence 404(b). At trial, however, the State intended to introduce the evidence of the prior convictions for impeachment purposes only, not as substantive evidence. The trial court properly analyzed the admissibility of the evidence under Rule 609, which governs the use of prior convictions for impeachment purposes. This court has previously concluded that theft is a crime of dishonesty, making it highly probative of credibility. *State v. Baker*, 956 S.W.2d 8, 15 (Tenn. Crim. App. 1997). The trial court considered the convictions and found that the probative value outweighed any potential prejudice. There is no evidence that the trial court abused its discretion and breached a clear and

4

unequivocal rule of law. Accordingly, we conclude that the defendant is not entitled to any relief.

## CONCLUSION

Based upon the foregoing analysis, we affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE