IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
July 12, 2016 Session

**STATE OF TENNESSEE v. THOMAS R. BOYKIN**

**Appeal from the Circuit Court for Gibson County**
**No. 19074    Clayburn Peeples, Judge**
_____

**No. W2016-00172-CCA-R3-CD – Filed August 31, 2016**
_____


A Gibson County jury found the Defendant, Thomas R. Boykin, guilty of two counts of aggravated child abuse. The trial court sentenced the Defendant as a multiple offender to thirty-five years imprisonment for each count to be served consecutively for a total effective sentence of seventy years in the Tennessee Department of Correction. On appeal the Defendant asserts that the evidence is insufficient to support his convictions and his sentence is excessive. After review, we dismiss this appeal because the Defendant failed to timely file a notice of appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Harold R. Gunn, Humboldt, Tennessee, for the appellant, Thomas R. Boykin.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Garry G. Brown, District Attorney General; and Jerald Campbell, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case arises from the physical abuse of and resulting injuries to the three-year old male victim. For his role in the victim's injuries, a Gibson County Grand jury indicted the Defendant for two counts of aggravated child abuse. We summarize the evidence presented at trial as follows: The Defendant began dating the victim's mother in November 2013, and the couple moved in together in January 2014. The victim's mother had three children: K.W., J.T., and the victim. The victim was the youngest of the three

children and, although everyone in the home suffered the Defendant's abuse, the victim suffered the most severe abuse, often in response to wetting his pants.

The victim's mother first noticed injuries to the victim in the beginning of February 2014. The victim sustained broken bones in both hands. The Defendant also used a belt to discipline the three-year-old victim. The victim's mother would hear the sound of the victim hitting the floor when the Defendant would hit him with the belt. On one occasion, the victim's mother attempted to intervene, and the Defendant ordered the victim to "stop crying and get up." When the victim got up off of the floor, he was rubbing his hands. Following this incident, the victim's mother and the Defendant engaged in an argument about the victim's mother "interfering" in the Defendant's discipline of the victim. During this argument, the Defendant bit the victim's mother.

On another occasion, the Defendant called the victim's mother into the room and said, "Look what your son did. He put his hand on the heater and burnt hisself." The victim's mother treated the victim's burns with "Vaseline and peroxides" but did not seek medical attention for the injuries. Approximately a week later, the Defendant, after disciplining the victim, alerted the victim's mother about additional burns the victim sustained on the space heater. This time the burns were on the victim's buttocks. The Defendant explained to the victim's mother how the victim had backed into the heater and burned himself. The Defendant's explanation of the injuries led to a confrontation between the victim's mother and the Defendant. Once again, the victim's mother treated the burns and did not seek medical attention for fear of losing custody of the victim.

On March 5, 2014, the victim had an "accident in his pants." The Defendant went into the victim's bedroom to talk with him about wetting his pants, and the victim yelled, "No." From the kitchen, the victim's mother heard "the wind from a belt" and the sound of "somebody falling on the floor." The victim's mother confronted the Defendant about hitting the victim, and the two engaged in an argument. The Defendant denied hitting the victim and said, "What did I tell you about interfering when I'm disciplining him?" The Defendant cursed at the victim's mother and ordered her to leave the room. The couple's argument continued in another room where the Defendant choked the victim's mother for accusing him of hitting the victim. The Defendant cut off her air supply long enough to render the victim's mother unconscious. When she regained consciousness, the Defendant stated, "Let me leave before I hurt you."

When the Defendant returned, the victim's mother ran a bath for the victim. The victim's sister, K.W., reported to officials that "the mean man," whom she identified as the Defendant, put the victim's head in water and dragged him in the tub. K.W. reported hearing the victim say, "glub, glub, glub," and then crying. She also heard a loud "thump" or "boom," while the Defendant and the victim were in the bathroom together.

2

The victim's mother did not recall hearing any noises from the bathroom and learned of the victim's unconsciousness when the Defendant brought the victim to her, wrapped in a towel. The victim could "barely keep his eyes open" and was "going in and out." The Defendant took the victim across the street to a neighbor's residence.

The Defendant told first responders that, "we left him for just a second and told the child not to get out of the tub before we got back." He further stated that, "'when I came back into the room, to the bathroom,' . . . the child was coming in and out of consciousness. . . . 'One eye was looking at me and one eye was looking away.'" Finally, the Defendant offered, "Also, the child has burns that he received playing with his cousins." The Defendant was unsure, however, on the particulars of how the burn injuries occurred.

Police officers present at the hospital observed burn marks in a diagonal pattern across the victim's buttocks. One officer testified that the victim's injuries were among the worst he had seen in his eleven years on the police force. At the hospital, although there were no visible injuries to his abdomen, the victim clutched his stomach in pain. While hospitalized, the victim responded to a nurse attempting to change his diaper, saying, "Don't hurt me. Don't hurt me." She reassured the victim that he would not be hurt and then, after finishing the diaper change, the nurse attempted to move the victim back up toward the head of the bed by placing her hand beneath his neck to stabilize his head. When she did so the victim said, "Don't choke me," and began crying telling the nurse that he had not been a "bad boy."

The burns on the victim's hands were diagnosed as "partial thickness burn[s]," which means that the superficial layers of skin had been burned down into the deeper layers. The burns on the victim's buttocks were also "very deep burns." The victim's injuries were consistent with non-accidental injuries. The victim was also diagnosed with a subdural hemorrhage and a possible duodenal hematoma, both of which can be lethal and can result from blunt force trauma. Additionally, the victim had healing fractures in both hands consistent with "something hitting" the top of the hand. Medical lab work revealed that the victim's liver functions were elevated indicating blunt force trauma to the liver.

Based upon this evidence, the jury convicted the Defendant of two counts of aggravated child abuse. The trial court sentenced the Defendant as a multiple offender to thirty-five years imprisonment for each count and ordered that the sentences be served consecutively for a total effective sentence of seventy years in the Tennessee Department of Correction. It is from these judgments that the Defendant appeals.

## II. Analysis

3

On appeal, the Defendant asserts that the evidence is insufficient to sustain his convictions for aggravated child abuse and that his sentence is excessive. The State responds that the Defendant untimely filed his notice of appeal and, therefore, asks this Court to dismiss the appeal.

Our review of the record shows that the trial court entered the Defendant's judgments on July 28, 2015. Tennessee Rule of Criminal Procedure 33(b) provides that a motion for new trial shall be made "within thirty days of the date the order of sentence is entered." The Defendant filed his motion for new trial on September 8, 2015, beyond the thirty day limit. As the Tennessee Supreme Court and this Court have often repeated, this thirty-day period is jurisdictional and cannot be expanded. *State v. Bough*, 152 S.W.3d 453, 460 (Tenn. 2004); *State v. Martin*, 940 S.W.2d 567, 569 (Tenn. 1997); *State v. Stephens*, 264 S.W.3d 719, 728 (Tenn. Crim. App. 2007); *see also* Tenn. R. Crim. P. 45(b)(3) ("The court may not extend the time for taking any action under Rules of Criminal Procedure 29, 33 and 34, except to the extent and under the conditions stated in those rules.").

Therefore, the Defendant had thirty days after the trial court entered its judgment in which to file its notice of appeal. *See* Tenn. R. App. P. 4(a) (providing that the notice of appeal be filed within thirty days after the "date of entry of the judgment appealed from"). The notice of appeal in this case was not filed until January 25, 2016, clearly outside the thirty-day time frame. The notice of appeal, however, is not jurisdictional and the filing of such a document may be waived in the interest of justice. Tenn. R. App. P. 4 (a). We note that the Defendant has neither requested a waiver of the filing deadline nor provided this Court with any explanation as to why either the motion for new trial or the notice of appeal were untimely filed. Further, our review of the record reveals no meritorious claim warranting our waiver in the interests of justice. Therefore, we dismiss the Defendant's appeal.

### III. Conclusion

Based upon the foregoing, we dismiss the Defendant's appeal for failure to timely file the appeal.

_____
ROBERT W. WEDEMEYER, JUDGE

4