IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 11, 2026

## STATE OF TENNESSEE v. LACY FRANK WALLS, III

**Appeal from the Circuit Court for Giles County**
**No. 16849     M. Caleb Bayless, Judge**

_____

### No. M2024-01603-CCA-R3-CD

_____

Lacy Frank Walls, III, Defendant, was convicted of evading arrest and three counts of possession of a firearm after being convicted of a felony. The trial court sentenced Defendant to an effective sentence of forty years in incarceration. After the denial of a motion for new trial, Defendant appeals, arguing that the trial court refused to consider all of the issues presented in his motion for new trial. After a review, we find the trial court erred by refusing to consider all the issues presented in the motion for new trial. On remand, the trial court should hold a new hearing on the motion for new trial, at which the trial court should consider all the issues in the motion. The trial court should also enter judgment forms for Counts Four and Five and enter corrected judgment forms in Counts One, Two, and Six, reflecting Defendant was convicted after a jury trial and the proper statute under which Defendant is required to serve eighty-five percent of his sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part, Reversed in Part, and Case Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JOHN W. CAMPBELL, SR., and TOM GREENHOLTZ, JJ., joined.

Travis B. Jones, District Public Defender; Teresa Brewer Campbell, Assistant Public Defender (at trial), and Brennan M. Wingerter, Assistant Public Defender – Appellate Director (on appeal), for the appellant, Lacy Frank Walls, III.

Jonathan Skrmetti, Attorney General and Reporter; Caroline Weldon, Assistant Attorney General; Brent Cooper, District Attorney General; and Hunter Knight, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Defendant was indicted by the Giles County Grand Jury for three counts of felon in possession of a firearm, in violation of Tennessee Code Annotated section 39-17-1307, Counts One, Two, and Six; one count of evading arrest, Count Three; one count of theft of property valued at $1000 or more, Count Four; and one count of simple possession of methamphetamine, Count Five. Prior to trial, the trial court entered an order of nolle prosequi for Counts Four and Five. The trial court did not enter judgment forms disposing of either of those counts. A jury convicted Defendant of the remaining counts.

Defendant filed a timely motion for new trial pursuant to Tennessee Rules of Criminal Procedure 29 and 33, in which he challenged the sufficiency of the evidence, argued his sentence was excessive, and claimed that the trial court's decision to allow Defendant's affiliation with a known hate group to be discussed at sentencing caused Defendant's life to be in jeopardy and influenced the "severity of the sentencing." At the hearing, counsel for the State argued that neither procedural rule concerned Defendant's sentence, and the trial court agreed. The trial court denied the motion for new trial, stating that even though the issues about the sentence were not raised properly, Defendant's prior criminal history was "substantial" and included crimes of aggravated burglary and aggravated assault which involved "harm to persons." Defendant filed a timely notice of appeal.

*Trial*

Though the underlying facts are not entirely necessary for the resolution of the issues on appeal, we find it appropriate to include them in the event of further appeal. At trial, Giles County Sheriff's Deputy Stetson Thomas testified that on April 12, 2023, he saw a white Nissan Altima at the "[Big Chicken] Roadway Inn" that "match[ed] a vehicle that ran from [him] the day prior." Deputy Thomas called for backup before approaching the vehicle "[i]n a parking spot in front of [Room] 127." The vehicle had an expired registration. Deputy Thomas ran the vehicle's VIN number to verify the owner. The result confirmed that the vehicle belonged to Defendant. Deputy Thomas called the dispatcher, then reached for his patrol rifle and waited behind the vehicle for more deputies to arrive.

Before backup arrived, Deputy Thomas saw the door to Room 127 open. A man appeared in the doorway. Deputy Thomas recognized the man as Defendant, so he yelled out, "Lacy, you're under arrest." The door to the room slammed shut. Deputy Thomas reached for his cell phone, "to get help to come faster," but before he could dial the phone, "the door swung open." Defendant "immediately ran down this side of the inn towards the highway." Deputy Thomas pursued Defendant on foot, yelling again, "Lacy, you're under arrest" and "Stop."

- 2 -

As Defendant ran away, he dropped a black bag and a cell phone. Defendant turned to look at Deputy Thomas. At that point, Deputy Thomas again informed Defendant that he was under arrest. He told Defendant, "Show me your hands." Defendant "turned around and ran up on the highway on I-65." Defendant was about thirty yards ahead of Deputy Thomas.

Deputy Thomas continued to pursue Defendant on foot. Defendant ran up an embankment and across the northbound lane of I-65, ran through the median, and dropped his phone again. Defendant turned around to look at Deputy Thomas, who again said, "Lacy, you're under arrest. Stop." Defendant ran across the southbound lanes of the interstate before going off "into the woods." Deputy Thomas recovered Defendant's cell phone.

When Deputy Thomas got to the "woodline," backup officers arrived and searched for Defendant. There were about fifteen officers that helped with the search, but they did not find Defendant.

Deputy Thomas returned to his patrol car, and the door to Room 127 was still open. From the doorway to the room, Deputy Thomas saw "some contraband and an M4 rifle." Deputy Thomas knew that Defendant was a prior convicted felon for aggravated burglary. The room contained the M4, about 600 rounds of ammunition, and an M4 carbine in a "rifle sock." Defendant's driver's license and Social Security card were on top of the dresser. The keys to the white Nissan Altima were found on the ground in the doorway to Room 127. There was no one else in the room, and Deputy Thomas did not see anyone else come out of the room when Defendant ran.

Two days later, an employee from Bass Recycling Center reported that a person matching Defendant's description was "getting into trucks there on the yard." Deputy Thomas went to investigate. An employee led Deputy Thomas to an area near the wood line of the property. Defendant saw Deputy Thomas and lay down behind a fallen tree. Deputy Thomas told Defendant he was under arrest. Deputy Thomas testified he could see the handle of a purple pistol sticking out from Defendant's back pocket. He instructed Defendant to stay still. Defendant exclaimed he was, "[D]one." Defendant was placed in handcuffs. Deputy Thomas removed a loaded .9-millimeter Ruger pistol from Defendant's back pocket.

The jury convicted Defendant as charged with three counts of felon in possession of a firearm and one count of misdemeanor evading arrest.

*Sentencing Hearing*

At the sentencing hearing, the State introduced the presentence report and a "pile of convictions" as a collective exhibit. The prior felony convictions included two convictions for theft of property over a thousand dollars, one conviction for retaliation for past action, one conviction for theft, two convictions for auto burglary, two convictions for forgery, one conviction for theft of property over $10,000, two convictions for aggravated burglary, one conviction for vandalism, and one conviction for trespassing. The exhibit also included one conviction for failure to appear, three convictions for aggravated assault with a deadly weapon, one conviction for felon in possession of a firearm having been convicted of a dangerous felony, one conviction for driving under the influence, and one conviction for contributing to the delinquency of a minor. For determining Defendant's range of punishment, Counsel for the State asserted that Defendant had seven felony convictions within the range for a class B felony.

Defendant testified that he pled guilty to a lot of the crimes, including a "[b]est interest plea on the aggravated assaults [in Marshall County] 'cause there was[] no victim." Defendant claimed those charges were based on "somebody" who "said they saw [Defendant] sitting in a car holding a gun."

Defendant informed the court that he had been married for twenty-four years and had one child and four grandchildren. Defendant claimed that the hotel room was not his room but admitted that he had a gun when he was arrested. Defendant told the trial court his trouble started when his house burnt down from "faulty wiring" and he "had to go to a psychiatric hospital for a while." Defendant claimed that he previously pled guilty to some offenses that he did not commit.

Defendant testified that he ran from police on the day he was arrested because the officer "was hollering he was gonna kill me" and he "had a warrant." Defendant admitted that this was not brought up at trial but insisted that he told his attorney. Defendant claimed the two long guns found in the room were not his because it was not his room.

Defendant did not recall filling out the presentence report and claimed that he did not review it but acknowledged that his signature appeared on the presentence report. Defendant testified that the longest period he ever held a job was eight years at Valley Packaging from 1996 to 2003. Defendant testified that he had not worked since 2012 when he was put on disability. Defendant admitted that he got support from his wife and friends, including Ricardo Lopez.

- 4 -

When asked if he received support from the Ku Klux Klan ("KKK"), Defendant plead the Fifth. Counsel for the State asked Defendant if he recognized a document[1] that was found in Defendant's wallet. Defendant explained that it was a joke that Mr. Lopez played on him, explaining that it was "just a little white knight" that had his name on it and the date "5-1 2017." Defendant denied affiliation with the KKK and claimed that he "just had it in [his] pocket." Defendant denied that he knew how to get in touch with KKK members. Defense counsel objected, arguing that the line of questioning was putting Defendant in "much danger." The trial court overruled the objection. Defendant denied that he knew anyone in the "Klan" or that his father was in the "Klan." Counsel for Defendant objected again based on relevance. The trial court sustained the objection going forward but overruled on the questions already asked.

Defendant testified that he was on suicide watch at the time of trial. He said that he "[b]lacked out" and hit his head. Defendant agreed that he was sent to "special needs" after trial because he "made a statement" indicating that he wanted to harm himself.

At the conclusion of the proof, the State clarified that they were arguing Defendant be classified as a persistent offender based on five prior felonies that were included in the State's notice of enhancement.[2] The State mentioned additional convictions that were not included in the notice of enhancement but were included in the presentence report to support their desire for consecutive sentencing. The State argued Defendant's sentence should be enhanced based on his prior criminal history.

Counsel for Defendant argued that Defendant's sentence should be mitigated because his conduct neither caused nor threatened serious bodily injury, he was suffering from a mental condition that reduced his culpability because he was taking medication, and he was suffering through terrible depression.

Counsel for the State addressed the State's notice of enhancement to establish Defendant's sentencing range. The trial court asked the State if Defendant was sentenced under Tennessee Code Annotated section 39-17-1307(b)(1)(A), the possession of a firearm by a convicted felon statute, and whether it was an "85% crime" or a "100% crime." The State concluded that possession of a firearm by a person convicted of a felony crime of violence under 39-17-1307(b)(1)(A)[3] meant that Defendant would serve 85% of his

---

[1] The document was not admitted as an exhibit and does not appear in the record on appeal.

[2] The State's notice of enhancement does not appear in the record.

[3] This statute was amended in 2025. The version of the statute in effect at the time of Defendant's trial and sentencing read, in pertinent part:

> (a)(1) A person commits an offense who carries, with the intent to go armed, a firearm or a club.

sentence pursuant to Tennessee Code Annotated section 40-35-501(y)(1)(A). The trial court noted it was going to "include the four felonies . . . listed in the January 29th notice and nothing to do with the Marshall County notice" to enhance Defendant's sentence.

The trial court stated that it considered the evidence presented at trial, the evidence at the sentencing hearing, the presentence report, Defendant's own testimony in regard to sentencing, the principles of sentencing, arguments made as to sentencing alternatives, the nature and characteristics of the criminal conduct involved, the evidence and information offered by the parties on the mitigating and enhancement factors, and the statistical information provided by the Administrative Offices of the Court as to sentencing practices for similar offenses in the State of Tennessee as well as the statement of Defendant on his own behalf when testifying and any potential rehabilitation and/or treatment. The trial court discussed enhancement factors, noting that Defendant had an "extensive prior criminal record" and that it was "primarily relying upon the misdemeanor convictions for this purpose." For mitigating factors, the court considered that Defendant's criminal conduct neither caused not threatened serious bodily injury but did not give it "significant weight" because when Defendant was apprehended, he had a weapon that "absolutely could've caused and/or threatened serious bodily injury." The trial court also considered that Defendant was suffering from a mental or physical condition that reduced his culpability but gave "it very little weight as the only information . . . . [about] the mental or physical condition" came from Defendant, and the trial court questioned Defendant's credibility.

As to consecutive sentencing, the trial court did not find any mandatory consecutive sentencing factors but found that Defendant was "a professional criminal who has knowingly devoted much of [D]efendant's life to criminal acts as a major source of livelihood and clearly from 2006 up until 2023 when [Defendant] was incarcerated, [Defendant] does appear to be that of a professional criminal." The trial court also found Defendant was an "offender whose record of criminal activity is extensive." The trial court also noted that Defendant committed these offenses while on probation and had "additional sentences not yet fully served including those in Marshall County." The trial court relied on the "Marshall County" felony convictions "primarily" even though those convictions were not used for "classification purposes." Those convictions included three aggravated assault convictions and a felon in possession of a firearm conviction. The trial court noted

(b)(1) A person commits an offense who unlawfully possesses a firearm, as defined in § 39-11-106, and:
(A) Has been convicted of a felony crime of violence, an attempt to commit a felony crime of violence, or a felony involving use of a deadly weapon; . . . .

The statute also classified the offense committed under subdivision (b)(1)(A) as a Class B felony. T.C.A. § 39-17-1307(2).

Defendant was a Range II, multiple offender "looking at 12 to 20 years on each of those offenses." Based on the enhancement factor, the trial court sentenced Defendant to twenty years on each felon in possession conviction, ordering Count Two to run consecutively to Count One, and Count Three to run concurrently. The trial court sentenced Defendant as a Range II, multiple offender to eleven months and twenty-nine days for evading arrest, to be served concurrently to the remaining sentences, for a total effective sentence of forty years served at 85%. The trial court denied probation. The trial court did not enter judgment forms for Counts Four and Five. On the judgment forms for Counts One, Two, and Six, a handwritten notation appears in the box labeled "Release Eligibility for Felony Offenses" reading "39-17-1304(1)(b)(i) @ 85%."[4]

Defendant filed a timely motion for new trial. In the motion, he challenged the sufficiency of the evidence and his sentence and argued his "affiliation with a known hate group was agreed not to be discussed during the trial but was introduced during the sentencing phase of the trial, which may or may not caus[e] the defendant's life to be in jeopardy and may have influenced the severity of the sentencing."

At the hearing on the motion for new trial, the State argued that the evidence was sufficient and that the "question of a sentence is not properly before the Court on a motion for new trial under Rule 33." Counsel for the State insisted that there was "another mechanism" for Defendant to challenge his sentence. The trial court found there was sufficient evidence to support the convictions and agreed with the State about the sentencing issues. The trial court commented that Defendant was "not ranged to the extent

---

[4] We are perplexed by this notation as Defendant was not charged with a violation of Tennessee Code Annotated 39-17-1304, which provides:

> (a) It is an offense for any person to possess, use or attempt to use restricted firearm ammunition while committing or attempting to commit a crime of violence. A violation of this section constitutes a separate and distinct felony.
> (b) It is an offense for any person or corporation to manufacture, sell, offer for sale, display for sale or use in this state any ammunition cartridge, metallic or otherwise, containing a bullet with a hollow-nose cavity that is filled with an explosive material and designed to detonate upon impact; provided, that this section shall not apply to any state or federal military unit or personnel for use in the performance of its duties.
> (c)(1) A violation of subsection (a) by possession of restricted firearm ammunition is a Class E felony.
> (2) A violation of subsection (a) by use or attempted use of restricted firearm ammunition is a Class D felony.
> (3) A violation of subsection (b) is a Class E felony.

in which [he] might could have been" and acknowledged that "people may not have been harmed" by Defendant's actions but that there were other convictions in Defendant's past that involved people and were violent. In an order denying the motion for new trial, the trial court concluded:

> Next, the State pointed out that an issue as to the sentence is not properly before the Court on a motion for new trial pursuant to Rule 33. The Court notes that, in any case, it cannot agree with Defendant's contention that his prior criminal history – which is substantial – is not one which involves harm to persons. His convictions include theft, forgery, auto burglary, retaliation for past action, aggravated burglary, and aggravated assault. These latter two are considered violent offenses under the letter of the law in Tennessee. The [c]ourt similarly finds that the issue regarding the Defendant's affiliation with the Ku Klux Klan is not properly before the Court.

It is from this order that Defendant appeals.

*Analysis*

On appeal, Defendant argues that the trial court erred in refusing to consider the merits of his sentencing and evidentiary issues at the hearing on the motion for new trial, asking this Court to remand for a new hearing on the motion for new trial at which the trial court will consider all issues raised by Defendant. The State "fails to see the utility" of such an "exercise," instead urging this Court to affirm Defendant's within-range sentences. The State does not address Defendant's argument that the trial court improperly permitted "the introduction of highly prejudicial KKK allegations at the sentencing hearing."

Here, Defendant filed a motion for new trial pursuant to Rule 33(a) of the Tennessee Rules of Criminal Procedure, which provides in pertinent part that "[o]n its own initiative or on motion of a defendant, the court may grant a new trial as required by law." Tenn. R. Crim. P. 33(a). Issues of sufficiency of the evidence and sentencing are not required to be raised in a motion for new trial in order to be preserved on appeal. *State v. Bough*, 152 S.W.3d 453, 460 (Tenn. 2004), *abrogated on other grounds by State v. Thomas*, 687 S.W.3d 223, 242 (Tenn. 2024). "In ruling on the motion for a new trial, the court--on motion by either party--shall make and state in the record findings of fact and conclusions of law to explain its ruling *on any issue not determined by the jury*." Tenn. R. Crim. P. 33(c)(3) (emphasis added). Defendant's motion for new trial asked the trial court to review the sufficiency of the evidence, the sentence, and the admission of evidence about Defendant's affiliation with the KKK at the sentencing hearing. The trial court found two of Defendant's issues were not proper for a motion for new trial. We disagree.

## CONCLUSION

Defendant properly raised issues in a motion for new trial that should have been considered by the trial court. Failure to do so was error. Consequently, we remand the matter to the trial court for consideration of all of the issues raised in Defendant's motion for new trial. On remand, the trial court shall not categorically pretermit sentencing issues but shall consider and rule upon all the sentencing issues in Defendant's motion for new trial.

Additionally, the trial court should enter judgment forms for Counts Four and Five, indicating that those counts of the indictment were nolle prossed. The trial court should also enter corrected judgment forms for Counts One, Two, and Six, to reflect that Defendant was convicted by a jury. The trial court should also correct the clerical error on the judgment forms to remove references to Tennessee Code Annotated section 39-17-1307. From reading the transcript of the sentencing hearing, it appears the trial court wrote a notation in the release eligibility box in order to reflect that Defendant had to serve eighty-five percent of his sentence, but the trial court cited the incorrect statute. The discussion during the sentencing hearing reflects that Defendant's release eligibility was controlled by Tennessee Code Annotated 40-35-501(y)(1)(A) (2024) which provides:

> For the offenses listed in subdivision (y)(2) committed on or after July 1, 2021, there shall be no release eligibility until the person has served eighty-five percent (85%) of the sentence imposed by the court, less sentence credits earned and retained. However, no sentence reduction credits authorized by § 41-21-236, or any other law, shall operate to reduce below seventy percent (70%) the percentage of sentence imposed by the court such person must serve before becoming release eligible.

The case is remanded to the trial court for further proceedings consistent with this opinion.

_s/Timothy L. Easter_
TIMOTHY L. EASTER, JUDGE

- 9 -